MARY J. O'BRIEN *vs.* HERBERT W. PECK.

Suffolk.    December 11, 1907. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Contract*, Construction, Building contracts, Subsequent modification shown by conduct, of parties. *Evidence*, Extrinsic affecting writings, Circumstantial.

Upon the question, whether a contract in writing by a builder to do " the excavating, foundation and carpentering work " for a certain building according to certain specifications includes an agreement to do the lathing and plastering for the building, a provision in the contract that a certain payment shall be made when the plastering is completed, there being a later provision that the last payment shall be made when the whole building is completed, has no bearing, its only purpose being to fix the time when the payment is to be made.

The conduct of the parties to a contract in writing is not admissible to contradict its plain terms, although such conduct may be evidence of a subsequent modification of the contract by the parties.

By a contract in writing a builder agreed with a landowner " to furnish all of the excavating, foundation and carpentering work " and to furnish all the materials including tools, implements and stagings necessary to do such work " for the erection and completion of a five story wooden hotel building." The work was to be done in conformity with certain specifications. The specifications for excavating and foundation work were subdivisions under the heading " Mason Work." " Lathing and Plastering " was another subdivision under " Mason Work." There was a general heading " Carpenter Work " with nearly fifty subdivisions, none of which included lathing and plastering. The arrangement and framework of the specifications showed that lathing and plastering were regarded as a part of the mason work and not as a part of the carpenter work, and they were not a part of the excavating or the foundation work. There was a provision in the contract that a certain payment should be made when the plastering was completed. The last payment was to be made when the whole building was completed. The builder, who made the contract above described, made a sub-contract for the lathing and plastering and paid for that work. He was paid by the landowner the sums of money named in the contract at the times

specified, and was paid no additional sum for the lathing and plastering. After the last payment, the landowner sued the builder on the contract to recover damages for its imperfect performance. There was evidence that the lathing and plastering were defective. The defendant asked for a ruling that he was not required to do any of the work under the head of Lathing and Plastering in the specifications. The presiding judge refused to make this ruling and instructed the jury, that either the defendant originally was bound to do the lathing and plastering under the specifications, or that, as he went ahead and did it and as the plaintiff paid the contract price for the completed work, the rights of the parties must be governed by the construction which by their conduct they had put upon the contract. *Held,* that the refusal of the ruling and the instruction were erroneous; that the lathing and plastering were not included in the defendant's contract, the provision that a certain payment should be made when the plastering was completed having no bearing on this question; and that, as the terms of the contract in writing were plain, oral evidence was not admissible to contradict it; *also* that, if the plaintiff had contended that the conduct of the parties showed a subsequent modification of the contract, although the doing of the lathing and plastering by the defendant without making any claim for it as an extra might have been evidence of such a modification, yet even then it would be a question of fact for the jury whether the contract had been changed, and the instruction that as matter of law the defendant was bound to do the lathing and plastering as a part of the contract was erroneous. *Whether* the plaintiff could have any remedy in equity by a reformation of the contract was not before the court.

CONTRACT for the alleged breach by the defendant of the terms of a contract in writing, which is described in the opinion, to do certain work in the construction of a hotel upon land of the plaintiff at Winthrop for the sum of $21,333, alleging "that the defendant did not perform his contract in a thorough and workmanlike manner as agreed; that he did not conclude his work on the building within the time stated in his contract; that he did not do or furnish all the work and materials necessary to perform his contract according to its terms and the provisions of the plans and specifications; and that by reason of the defendant's failure to perform his contract faithfully as agreed the plaintiff had suffered losses as follows: first, in her business by reason of the defendant's delay and neglect in completing his contract within the time agreed upon; secondly, in the cost of continuing her construction loan on the building from the date agreed upon for the completion of the contract until the actual date of completing the building; thirdly, in completing the building at her own expense to comply with the laws of the Commonwealth and the plans and specifications; fourthly, in repairing and replacing defective and unworkmanlike construc-

tion at her own expense on the building; and fifthly, in making good defective work and material that existed in the building, but were not yet repaired or replaced." Writ in the Municipal Court of the City of Boston dated December 2, 1904.

On appeal to the Superior Court. the case was tried before *White*, J. The plaintiff put in an auditor's report in her favor, and rested.

The defendant then offered in evidence the contract in writing and the specifications, the material parts of which are described in the opinion. The defendant also put in evidence an agreement for a construction loan between the plaintiff and one Webber, in which advances were stipulated to be made by Webber to the plaintiff in the amounts and at the times of the payments stipulated to be made by the plaintiff to the defendant under the contract in suit. The defendant offered evidence tending to show that the plaintiff herself agreed to heat the building when required during the progress of the work, and also that she took the risk of any damage to the building from proceeding with the work without artificial heating of the building.

The defendant testified that the lathing and plastering were done by one Carlin under an agreement with the defendant, and that the defendant received no payment therefor from the plaintiff in addition to the sum of $21,333, which was paid him under the contract with the plaintiff at the times specified in that contract. The defendant also offered evidence that the only damage to the building consisted of "pitting" to some extent in the plastering and the shrinking of some of the inside finish, due to the exposed situation of the house directly upon the water front, and also to the absence of artificial heating while the plastering was being dried. He and his experts testified that all this could be repaired at an expense of less than $200.

The plaintiff testified in rebuttal that she did not agree to do the heating and never assumed the risk of any damage to the building from doing the work without artificial heating.

One Leighton qualified as an expert builder and contractor, and testified for the plaintiff that the inside finish had shrunk from the want of proper heating in the building when it was put on, and that the plastering was pitted badly, but that both

of these defects could be repaired without serious damage. He then testified that the plastering was in very bad condition; that some of the plastering was frozen and that it was a poor job; that the shrinking of the inside finish might have been caused by not properly drying the plaster; that the plastering was the most serious thing, and that in his opinion the building was not worth as much by $2,000 as it would have been if the specifications had been followed with reference to the plastering. In arriving at the estimate, he figured that the plastering ought to be torn off and done over again.

The defendant asked the judge to instruct the jury that the plaintiff was not entitled to recover, and also to give certain other instructions, among which was the following: "4. Under the contract declared on, the defendant was not bound and could not be required to do any of the work comprised under the head of Lathing and Plastering in the specifications."

The judge refused to give any of the instructions requested, and instead of the fourth, above quoted, gave the instruction which is quoted in the opinion. The jury returned a verdict for the plaintiff in the sum of $800; and the defendant alleged exceptions.

*W. R. Bigelow*, (*G. M. Stearns* with him,) for the defendant.
*M. H. Sullivan*, (*D. J. Maloney* with him,) for the plaintiff.

HAMMOND, J. This is an action against a builder to recover damages upon the ground of the alleged improper performance of a written contract. At the trial the evidence of improper workmanship was confined largely to the lathing and plastering; and one of the main questions was whether that kind of work was included in the contract.

The contract provides that the defendant "hereby promises and agrees . . . that he will do and furnish all of the excavating, foundation and carpentering work and furnish all the materials to carry the same to completion including all tools, implements, staging and things necessary to do said work for the erection and completion of a five story wooden hotel building, . . . the same to be done in compliance with the building laws of said Winthrop and the laws of said Commonwealth, and in full compliance and conformity with the plans and specifications made by Harry F. Briscoe for said building." Payments

are to be made according as the building progresses, the sixth payment to be made "when the plastering is completed," and the last payment "after the entire completion of said building and all liens for mechanics, laboring or material men which shall have been claimed against the said premises, shall have been properly discharged of record." It is further provided that the defendant shall "so arrange the progress of his work . . . as to allow the installation of the lighting and heating apparatus for said building at the proper times, with the least possible expense to the said O'Brien and the contractors for that work."

Then follow provisions to the effect that upon Peck's failure to carry on the work energetically, O'Brien may go on and complete the contract at Peck's expense, paying him at the end whatever balance may be due him. There are other provisions, but they seem to have no bearing on the question before us.

. It will be seen that this is not upon its face a contract to erect and complete a building, as was the case in *Morrill & Whiton Construction Co.* v. *Boston*, 186 Mass. 217. It relates only to three kinds of work, namely, "excavating, foundation and carpentering work." As to them it agrees to do all the work and furnish all the materials including tools, etc., necessary to do the work. The work is to be done in conformity with certain plans and specifications. To these therefore must we look for further particulars. The plans not being before us, we are confined to the specifications.

The first heading is "Mason Work." Under that heading appear the following subdivisions: "Loam," which provides for the removal of the loam: "Excavating," which provides for digging "for all footings, walls, piers, inside drains, chimneys and columns, excavating to hard pan in all cases," and also for digging the cellar: "Footing," which provides for laying footings "for foundation wall, piers to piazzas, chimneys and iron columns," the footings to be of concrete cement, "and all to be carefully bedded and levelled for superstructure": "Brickwork," which provides for building chimneys, fireplaces, etc. Then follow several other subdivisions, which it is unnecessary to repeat in detail. It is sufficient to say that they give detailed directions as to thimbles and ash doors "for fire flues"; as to a

ventilating register in the kitchen chimney, and as to chimney caps; as to granite steps both at the front and at the rear entrance, and as to the concrete cellar floor. Then comes a general direction to do all cutting in masonry required to assist other mechanics. The last subdivision is " Lathing and Plastering," which contains detailed directions as to that work. So much as to the mason work.

The next general heading is " Carpenter Work," under which are nearly fifty subdivisions, covering in all twelve pages. We need not recite these in detail. It is sufficient to say that, numerous as they are, no one of them has any reference whatever to lathing and plastering. Then follow more general headings, among which are " Gas Piping " and " Painting." The whole arrangement and framework of the specifications shows that the lathing and plastering were regarded as a part of the mason work and not as a part of the carpenter work. It is certain that it is not listed as a part of the latter work. Nor is it a part of the excavating or foundation work. Looking only at the specifications, there is as much reason to say that furnishing the chimney caps, or the granite doorsteps is a part of the defendant's contract as to say that lathing and plastering is.

It is urged, however, by the plaintiff, that the provision in the contract that the sixth payment should be made when the plastering is completed shows that that was a part of the defendant's work. That position is untenable. The only purpose of the clause is to state the condition of the building when the payment shall be made, like the provision that the last payment shall be made " after the entire completion of said building." Upon an inspection of the contract, interpreted by the aid of the specifications, it plainly appears that lathing and plastering was not a part of the defendant's written contract. It follows that the fourth ruling should have been given.

The judge instructed the jury that " either the defendant originally, according to the fair intent of the contract and of the specifications, was bound to do the lathing and plastering, or if under the contract he was not strictly bound to do it, he is now bound because of the construction that both he and the plaintiff put upon that contract; in other words, that he did go ahead and do the plastering and lathing and that he paid for it out of

his $21,333, the contract price, so that the construction which they put upon it is the one to govern, and that he was bound to do the lathing and plastering."

The written contract being plain upon its face, the conduct of the parties was not admissible to contradict it, and the jury should have been so instructed. *Menage* v. *Rosenthal,* 175 Mass. 358, and cases cited. See *Strong* v. *Carver Cotton Gin Co.* 197 Mass. 53. If the contention of the plaintiff had been that the written contract had been subsequently modified so as to put upon the defendant the work of lathing and plastering, then the fact that the defendant did that work without making any claim for it as an "extra," if such was the fact, might have been evidence in support of that contention. But even then it would have been a question of fact and not of law. In no event could the ruling have been made that because the defendant had done the lathing and plastering and paid for it out of the contract price it followed as matter of law that he was bound to do it as a part of the contract. The ruling given was erroneous. It becomes unnecessary to consider the other exceptions.

Whether the plaintiff can have any remedy in equity by way of a reformation of the contract is not before us.

*Exceptions sustained.*