TAXI SERVICE COMPANY *vs.* GULF REFINING COMPANY.

Suffolk.     March 13, 1925. — May 20, 1925.

Present: RUGG, C.J., CROSBY, WAIT, & SANDERSON, JJ.

*Contract*, Construction, Performance and breach.

A refining company made with a taxi service company an agreement in writing to sell and deliver gasoline, which contained provisions as follows: "QUANTITY — Gallons maximum 500,000 gallons minimum 500,000;" "DELIVERY — By Tank Car in lots of not less than One tank car nor more than One tank car unless otherwise agreed upon. Deliveries to be in approximately equal monthly quantities;" "TIME — Between April 21–1915 and April 21–1916 Five days' written notice to be given . . . [the refining company] before each shipment is re-

quired." In no month excepting one did the taxi company order one twelfth of five hundred thousand gallons. A tank car's capacity was about eighty-one hundred gallons. The taxi company's storage capacity was ten thousand gallons. On April 14, 1916, when there was a balance of about one hundred fifteen thousand gallons of the five hundred thousand gallons undelivered, the taxi company demanded delivery of that balance and the refining company refused delivery. In an action by the taxi company for resultant damages, there was evidence tending to show acquiescence by silence on the part of the defendant to the plaintiff's not ordering the whole monthly quantity with regularity, and that the defendant's representative orally approved of sales made by the plaintiff to a third party. *Held,* that

(1) The question of waiver and of modification of the terms of the contract were for the jury, who, taking into consideration the conduct of the parties in their series of transactions, were to interpret their intention as indicated by their acts and words;

(2) The parties could be found to have contemplated, when they used the word "approximately," that the variation from an exact one twelfth would be at least one thousand one hundred and sixty-seven gallons less or six thousand nine hundred and thirty-three gallons more than that fraction;

(3) It could not be ruled that the plaintiff in the months when it had not ordered its full quota under the contract had lost or waived any of its rights with regard to the total amount of gasoline to be delivered under the contract;

(4) It was proper to refuse to rule that the contract in substance was an agreement to supply the plaintiff with its requirements as to gasoline, at an agreed price, for the period covered by the contract, to be delivered in approximately equal monthly quantities not to exceed in the aggregate five hundred thousand gallons;

(5) The contract contemplated a storage use at the plaintiff's plant;

(6) The contract as written, when all parts are considered, gave the plaintiff the right to call for approximately one twelfth of five hundred thousand gallons of gasoline per month and gave the defendant the right to insist on the delivery of that amount;

(7) It was proper to refuse to rule that damages should be limited to the amount of gasoline which the plaintiff was compelled to purchase and actually purchased to meet the reasonable requirements of its business;

(8) A ruling that the plaintiff's recovery must be limited to nominal damages could not properly have been given.

CONTRACT with a declaration as amended in two counts, described in the opinion, for breach of a contract in writing to sell gasoline to the plaintiff in tank car lots. Writ dated August 28, 1916.

In the Superior Court, the action was tried before *Cox,* J. It appeared that, at the time of the demand by the plaintiff

on April 14, 1916, described in the opinion, there were un-delivered, of the five hundred thousand gallons called for by the contract, about one hundred fifteen thousand six hundred and thirty-five gallons. Material evidence is described in the opinion. At the close of the evidence, a motion for a verdict for the defendant was denied. The defendant then asked for the following rulings:

"1. That upon all the evidence there must be a verdict for the defendant."

"9. That the contract in substance was an agreement between the plaintiff and the defendant to supply the plaintiff with its requirements as to gasoline at an agreed price for the period covered by the contract, to be delivered in approximately equal monthly quantities not to exceed in the aggregate five hundred thousand gallons.

"10. That if the court rules, contrary to the defendant's prayers for rulings, that the contract required the delivery of five hundred thousand gallons of gasoline during the period of the contract, then the defendant requests that the court rule that the damages assessed are to be limited to the amount of gasoline which the plaintiff was compelled to purchase and actually purchased to meet the reasonable requirements of its business.

"11. That if the court rules, contrary to the defendant's foregoing prayers for rulings, then the defendant requests that the court rule that in accordance with the evidence the damages assessed are to be limited to nominal damages.

"12. That there is no sufficient evidence to prove that the plaintiff is entitled to receive substantial damages."

The rulings were refused. There was a verdict for the plaintiff in the sum of $17,425.48. The defendant alleged exceptions.

*W. J. Nolan,* for the defendant.

*J. E. Hannigan,* (*E. J. Brandon* with him,) for the plaintiff.

SANDERSON, J. The plaintiff in this action seeks to recover damages for breach of a contract for the purchase and sale of gasoline. The first count is based upon a written contract; and the second upon the same contract with a

waiver or modification of some of its terms.   The answer is a general denial and an allegation of performance by the defendant.

The contract provided that the defendant was to sell and deliver and the plaintiff to purchase and receive gasoline for use in its plant at 51 Lansdowne Street, Boston.   The terms were in part as follows: "QUANTITY — Gallons maximum 500,000 gallons minimum 500,000;" "DELIVERY — By Tank Car in lots of not less than One tank car nor more than One tank car unless otherwise agreed upon.   Deliveries to be in approximately equal monthly quantities"; "TIME— Between April 21–1915 and April 21–1916 Five days' written notice to be given representative of first party [the defendant] at 185 Devonshire St. Boston–Mass. before each shipment is required."   The contract was dated April 21, 1915, to become effective only when approved by the defendant's sales manager.   The approval required was given at a later date.

John H. McCarthy, the only witness called in the case, testified in substance that he was president of the plaintiff company during the entire period covered by the contract in question; the gasoline was ordered by the plaintiff and deliveries made by the defendant in accordance with the orders, and a tank car averages about eighty-one hundred gallons; that there was a difference of twelve and three fourths cents a gallon between the contract price and the market price of gasoline at the date of expiration of the contract; and the storage capacity of the plaintiff's plant was about ten thousand gallons; that he could not estimate the average daily use of gasoline but that it was ordered as fast as it was consumed; that the defendant's district sales manager asked him if the Clearing House Parcel Company still came in for gasoline and  when told that it did, said, "That is good."   He testified on cross-examination that the defendant's district sales manager told him the provision in the contract for "approximate equal monthly quantities" was for the protection of the defendant and that the gasoline could not be ordered in the last month, saying: "You might make a contract with me for half a million gallons of gasoline, and go on during the year buying it from anybody

and everybody if they gave you a lower price, and come on to me the last week of the term here and demand the half million gallons, and I could not give it to you."

The first delivery of gasoline was on April 24, 1915, and the last on April 22, 1916, the day after the expiration of the contract according to its terms. The total amount delivered was four hundred and four thousand, one hundred and forty-seven gallons, and the plaintiff is seeking damages for the defendant's refusal to deliver the balance of the five hundred thousand called for by the contract. Assuming that the months should be held to run from the twenty-first of one month to the twenty-first of the next, the total amount delivered at the end of the eleventh month was about three hundred and sixty-two thousand gallons. In no month during that period except one had the plaintiff ordered as much as one twelfth of five hundred thousand gallons. Except for the conversation hereinbefore stated, the date of which did not appear, neither party mentioned the fact that the amounts being delivered were substantially less than one twelfth of five hundred thousand gallons.

Between March 18, 1916, and April 17, 1916, the defendant in letters to the plaintiff stated that the plaintiff was entitled to forty-one thousand six hundred and sixty-seven gallons during the last month the contract was in force; that on April 13 there was a balance due the plaintiff of one thousand two hundred and three gallons; that the defendant had been willing to furnish the plaintiff with the full monthly quota due under the contract for use in its plant; and that the contract never contemplated the entry by the plaintiff into the wholesale business. During the same period the plaintiff wrote that it assumed the defendant would send gasoline as the plaintiff ordered it under the contract; that the minimum purchased was five hundred thousand gallons, and the provision for approximately equal monthly deliveries was for the accommodation of the parties only and did not in any way require a regular amount per month; that it would hold the defendant responsible for any failure to furnish the entire five hundred thousand gallons purchased if the plaintiff ordered them; and that it would

accept deliveries in tank wagons. On April 14 the plaintiff requested the defendant to ship the balance due under the contract, stating that it had arranged for storage and that the defendant might if more convenient ship two cars a week.

It must be assumed that all issues of fact have been decided in the plaintiff's favor; and the exceptions must be overruled unless there was error in refusing to allow the defendant's motion for a directed verdict or in refusing to grant one or more of his requests numbered nine, ten and eleven. The question in request numbered one for a ruling upon the whole evidence is more properly raised by the motion for a directed verdict; and request numbered twelve is not substantially different from that numbered eleven. No questions can be considered except those raised and passed upon by rulings in the trial court. *Bond* v. *Bond,* 7 Allen, 1, 6. The motion for a directed verdict, being general, was properly denied if the case should have been submitted to the jury on either count. *Kearns* v. *South Middlesex Street Railway,* 181 Mass. 587.

The balance of gasoline which by admission of the defendant in its letter was due under the contract was not delivered until the day after the contract had expired. The defendant contends that on April 14, 1916, when the plaintiff demanded the balance due under the contract, no gasoline was due except this balance of the last month's quota, which was delivered April 22. The question whether the plaintiff, by ordering less than it was entitled to in any month, waived its right to require gasoline to make up for this deficiency in a later month, was not set up in the answer and is not raised by the bill of exceptions except as it may be included in the motion for a directed verdict and in the request for a ruling that the damages assessed must be nominal. The questions of waiver and modification of the terms of a contract are to be left to the jury to decide when they depend upon a series of transactions in which the significance of the conduct of parties is to be interpreted and their intention as indicated by their acts or words is to be determined. *Fox* v. *Harding,* 7 Cush. 516. *West* v. *Platt,* 120 Mass. 421, 423. *National Coal Tar Co.* v. *Malden & Melrose Gas Light Co.* 189 Mass.

234.  *National Contracting Co.* v. *Vulcanite Portland Cement Co.* 192 Mass. 247.  *O'Brien* v. *Peck*, 198 Mass. 50.  *Glines* v. *Berry Box & Package Co. Inc.* 248 Mass. 518.  Parties may waive the right to treat the nonperformance in the original time as a breach.  *Tyers* v. *Rosedale & Ferryhill Iron Co. Ltd.* L. R. 10 Ex. 195.  *Thomson* v. *Poor*, 147 N. Y. 402.  Circumstances may be considered in determining the sense in which parties have used particular words of indefinite meaning such as "about" or "more or less."  *Brawley* v. *United States*, 96 U. S. 168.

Under the circumstances of this case there were questions for the jury to decide.  The plaintiff, if he had complied literally with the terms of the contract, should have ordered and accepted each month approximately forty-one thousand six hundred and sixty-seven gallons of gasoline.  If five tank cars were ordered the deliveries would fall below an exact one twelfth by about one thousand one hundred and sixty-seven gallons, and if six tank cars were delivered in a month the excess over an exact one twelfth would be about six thousand nine hundred and thirty-three gallons.  To comply with the terms of the contract for delivery in lots of not less nor more than one tank car at a time, the parties could be found to have contemplated when they used the word "approximately" that the variation from an exact one twelfth would be at least one thousand one hundred and sixty-seven gallons less or six thousand nine hundred and thirty-three gallons more than that fraction.  In four of the months five tank cars were delivered and this could be found to be the closest possible approach to a delivery of one twelfth of the total that could be made by deliveries in tank cars.  It could not be ruled that the plaintiff had in these months lost or waived any of its rights in regard to the total amount of gasoline to be delivered under the contract.  It well might have been found, as it was in *Worcester Post Co.* v. *W. H. Parsons Co.* 265 Fed. Rep. 591, on facts in some respects like those in the case under consideration, that the conduct of the plaintiff in ordering less than it was entitled to in any month had waived its right to require delivery at a later time of the balance due for that month, but the question

whether this conclusion should be drawn was for the jury and not for the court. *Baker* v. *Mair*, 12 Mass. 120. *McNeil* v. *American Bridge Co.* 196 Mass. 56. The motion for a directed verdict was denied properly.

The defendant by its ninth request asked the trial judge to rule that the contract in substance was an agreement to supply the plaintiff with its requirements as to gasoline, at an agreed price, for the period covered by the contract, to be delivered in approximately equal monthly quantities not to exceed in the aggregate five hundred thousand gallons. This request disregards the provision that the quantity of gasoline was to be a minimum of five hundred thousand gallons as well as a maximum of five hundred thousand gallons. It would be difficult to state in more precise language an agreement as to quantity. The word "required" is nowhere used in the contract except in connection with the notice which the plaintiff is to give when shipments are required. Here the word relates to the shipments only and should not be construed to limit the plaintiff's rights under the contract to its plant requirements. Gasoline for use in the plant, does not necessarily mean the same thing as gasoline for the plaintiff's requirements during the period covered by the contract. The plaintiff did not in terms agree to take only so much gasoline as it required during the period of the contract. It agreed only to buy it for use at its plant and it might well have intended that this use would extend beyond the contract period. By construing the contract to mean that the plaintiff may have no more gasoline than enough to meet its requirements or needs would be reading into it a limitation which is not there, and would give no meaning to certain terms of the contract. The expression "for use in . . . [the] plant" may have a different meaning from the words "its requirements." The record does not disclose that gasoline was or could be used in the sense of consumed in the plaintiff's plant. The nature of its business would seem to indicate that its taxicabs would receive the gasoline there for use or consumption in their operation upon the streets. So far as these taxicabs were concerned this would be construed to be a use in the plant within the meaning of

the contract.  The fact that use in the plant contemplates the consumption of gasoline while the taxicabs are being operated on the streets leads to the conclusion that the words cannot be held to mean consumed at the plant, but that they were intended to mean and should be construed as meaning that the gasoline would be stored at the plant until put into automobiles to be used in the sense of consumed either outside or inside its plant.  It was a storage use at the plant that was contemplated.  In the defendant's letter of April 13, 1916, there is no suggestion of plant requirements but it concedes that the plaintiff is entitled to forty-one thousand six hundred and sixty-seven gallons a month under the contract and refers to that as the plaintiff's monthly quota.  The only letter in which the defendant refers to any limitation of the use of gasoline to the plaintiff's taxicab business is that of April 17, 1916, four days before the contract expired, in which it says that any excess above taxicab requirements would be purchased at the plaintiff's risk. The contract as written, when all parts are considered, gave the plaintiff the right to call for approximately one twelfth of five hundred thousand gallons of gasoline per month and gave the defendant the right to insist on the delivery of that amount.  Such a construction will give a meaning to all its parts.  But even if the contract as written could be construed as a contract to supply the plaintiff with its requirements as to gasoline, the ruling was denied properly because of the evidence which would justify the jury in finding that making sales of gasoline at the plant was a use authorized and approved by the defendant.

Request numbered ten — that damages should be limited to the amount of gasoline which the plaintiff was compelled to purchase and actually purchased to meet the reasonable requirements of its business — could not have been given. The plaintiff was under no obligations to buy gasoline in order to have its damages assessed for breach of contract. This request also erroneously assumed that the plaintiff's rights under the contract were limited by the requirements of its business.  For the reasons before given it is apparent that the request for a ruling that the plaintiff's recovery

must be limited to nominal damages could not have been given. It was for the jury to decide upon all the evidence, under proper instructions, how much gasoline the plaintiff was entitled to receive when it demanded the balance due under the contract and whether the plaintiff's damages were nominal or substantial.

*Exceptions overruled.*