ALICE M. F. FOSTER & others *vs.* GEORGE LEE & others.

Essex.    February 3, 1930. — April 26, 1930.

Present: RUGG, C.J., WAIT, SANDERSON, & FIELD, JJ.

*Deed*, Construction, Reservation. *Adverse Possession. Evidence,* Presumptions and burden of proof, Extrinsic affecting writings, Competency. *Land Court,* Findings by judge.

A petition in the Land Court in 1927 was for the registration of title in fee to certain rocky ledges on the shore which lay between high water mark on the south and the upland on the north and which were surrounded on three sides by the ocean. The only value of the ledges

was in the use of the rocks thereon for walls or ballast. In 1827 one owning a lot of land including the ledges conveyed it by a deed containing a provision, "I reserve to myself, me [*sic*] heirs and assigns forever all the rocks that are lying on the southern part of said land to my and their own use and benefit forever, . . . and also reserve to myself and my heirs and assigns a free privilege to pass and repass over said lot of land to take away said rocks. . . ." In 1869 the then heirs of the grantor executed a lease of the ledges for fifty years to the then owner of the lot of land, "to use . . . [the ledges] for bathing, boating and fishing purposes and for no other." Rent was paid thereafter by the lessee and those who succeeded to his rights under the lease and to his title to the lot of land, until the expiration of the lease in 1919. They paid taxes on the ledges until 1920, after which taxes were assessed to the heirs of the grantor in the deed of 1827. The petitioners were the heirs of said grantor; the respondents were the then owners of the lot of land. A plan dated 1869, defining the ledges between the ocean and the upland of the lessee, was admitted in evidence. The trial judge ruled that record title to the ledges was not in the petitioners. The petition was dismissed. Upon exceptions by the petitioners, the evidence was not reported. *Held*, that

(1) The significance of the delineations and the words on the plan of 1869 was for the trial judge to determine;

(2) The use of the word "reserve" by the grantor in the quoted provision in the deed of 1827 was not necessarily controlling on the question, whether that provision effected a reservation or an exception: that question must be determined by the character of the provision rather than by the particular words used;

(3) The deed of 1827 was not of doubtful or ambiguous meaning; and evidence of the practical construction placed upon it by the successors of the parties to it by the lease of 1869 and their action under the lease was inadmissible;

(4) The quoted provision in the deed of 1827, interpreted in accordance with the natural meaning of the words used in the light of the circumstances existing at that time, showed that the grantor reserved merely an easement to take rocks which were on the southern portion of the land conveyed and a right of access for that purpose; that no exception of the fee in the ledges was intended; and that the ledges were conveyed by the deed;

(5) The ruling, that the record title to the ledges was not in the petitioners, was correct;

(6) A statement by the trial judge in his decision, that the possession of the lessee and his successors under the lease was not adverse to themselves; and a conclusion by him, that the petitioners had acquired no title by adverse possession, were interpreted by this court as findings of fact upon evidence not reported, and not as rulings of law;

(7) That conclusion was warranted: in the circumstances, it could not be said as a matter of law that the possession of the ledges by the lessee and his successors under the lease was the possession of the petitioners or their predecessors, the lessors;

(8) The petitioners had failed to maintain the burden of proving all the elements of a title by adverse possession;

(9) The petition properly was dismissed.

PETITION, filed in the Land Court on March 14, 1927, for the registration of title to certain land in Beverly.

The case was heard by *Davis*, J. Material portions of the judge's decision and rulings by him are stated in the opinion. It appeared that the lessee in the lease of March 1, 1869, was Henry Lee, Jr. The judge ordered the petition dismissed. The petitioners alleged exceptions.

*J. D. Graham*, for the petitioners.

*W. I. Morse*, (*J. P. Wright* with him,) for the respondents.

SANDERSON, J. This is a petition to register a tract of land situated in front of the property of the respondents Lee and Dobyne at Beverly, to the southeast of property of the West Beach Corporation and bounded easterly, southerly and westerly by the ocean, together with a right of way to the tract over land of Dobyne. The petitioners are the heirs of Israel Foster, and have succeeded to his right, title and interest in and to the locus and right of way. In 1819 Israel Foster acquired title to a lot of land which included the area now in question. He conveyed this lot in 1827 to one Woodberry, by a deed with the same description as that in the conveyance to him but with the following provision: "however I reserve to myself, me [*sic*] heirs and assigns forever all the rocks that are lying on the southern part of said land to my and their own use and benefit forever, and also all the beach that is lying to the Westward of said land I reserve to myself, my heirs and assigns forever, and also reserve to myself my heirs and assigns a free privilege to pass and repass over said lot of land to take away said rocks and to improve said beach at all times hereafter as may appear to be necessary." The respondents claim through and derive any title they may have in the premises from Henry Lee, Jr., who in 1846 succeeded to the interest, if any, of Woodberry in the tract in question, the deeds in this chain of title containing the clause "reserving all the legal rights and easements which Israel Foster's heirs and assigns may have in and upon the premises." March 1, 1869, the widow and heirs of Israel

Foster executed a lease to run for fifty years and duly recorded covering the tract to which the petitioners seek registration of title, "to use the same for bathing, boating and fishing purposes and for no other." The respondent Dobyne derives her title by mesne conveyance from the estate of Henry Lee.

The locus which the petitioners seek to register consists of rocky ledges with deposits of sand which vary according to the state of the tide. It lies between high water mark on the south and the upland of the respondents on the north. A copy of a plan dated March, 1869, defining the rocks between the sea and upland of Henry Lee, was admitted in evidence. The significance of the delineations and words on this plan was for the judge of the Land Court to determine.

The judge stated in his decision, "If the only question involved in this case is the construction of the deed of 1827 from Foster to Woodberry, in the light of the then attendant circumstances, it seems to me clear that the reservation therein was merely that of an easement to take rocks from the southern point of the land conveyed by said deed." He ruled that the practical construction by the parties as shown by the indenture of 1869 and the action of the parties thereunder was not admissible because the language of the reservation was not indefinite or ambiguous and requiring construction from evidence outside the record. Subject to the petitioners' exception the judge ruled that they have not a record title to the tract in question and found no title in them by adverse possession. The petitioners also excepted to the judge's refusal to give their requests for rulings and to the granting of certain rulings requested by the respondents.

". . . every deed is to be construed according to the intention of the parties as manifested by the entire instrument." *Allen* v. *Holton*, 20 Pick. 458, 463–464. The grantor who made use of the language in the deed evidently thought of his rights in the rocks as rights reserved. He not only by express language undertook to reserve them, but twice in the covenants referred to them as reservations. This language is not necessarily controlling because the question

whether "a particular provision is intended to operate as an exception or reservation is to be determined by its character, rather than by the particular words used." *Perkins* v. *Stockwell,* 131 Mass. 529, 530. *White* v. *New York & New England Railroad,* 156 Mass. 181, 185. By the terms of the deed the grantor did not undertake to reserve "all the rocks" but "all the rocks that are lying on the southern part of said land." The right of access also appears to limit that right so far as the rocks are concerned to passing and repassing over the land conveyed "to take away said rocks." It is in this respect unlike conveyances in which the metals or minerals in a described area have been granted with a right to enter and dig and carry away the ore, where it has been held that a present estate in the fee of the ore was granted. *Chester Emery Co.* v. *Lucas,* 112 Mass. 424. *Hunt* v. *Boston,* 183 Mass. 303, 305.

The judge of the Land Court found that the strip of foreshore claimed by the petitioners, lying between high water mark on the south and upland of the respondents on the north, consists of rocky ledge of granitic formation; that fissures have been worn in the ledge and through the action of frost portions of it have been split off; that there are a few large rocks that have been broken off, and a great quantity of small rocks have been made by the action of the sea varying in size from large pebbles to heavy stones; that many of these have been worn from the ledge while some probably have been washed up by the sea; that the ledge was not of value for commercial purposes in 1827 and has not been since; that the only value or commercial use of the rocks is and has been for walls or ballast. In the same sentence in which the rocks were reserved the grantor by a separate provision reserved "all the beach that is lying to the Westward of said land." In the two descriptions there is this significant difference, that the rocks reserved are on the land conveyed, but the beach undertaken to be reserved is west of the land conveyed. In locating the southeasterly boundary line of the West Beach Corporation (incorporated by St. 1852, c. 157) the judge found that the most westerly point of the strip of foreshore claimed by the petitioners does

not extend at high water mark to within about eleven feet of the boundary line of the West Beach Corporation, but covers beach extending westerly to that of the West Beach Corporation. In the deed to Israel Foster in 1819 the parcel of land bounded "Westerly by Wests Beach" was conveyed and the deed also contained a grant of "all that right in West's Beach that was the property of Elizabeth Jonson deceased." In the deed from Foster to Woodberry the grantor apparently did not undertake to convey the rights in "West's Beach" which had been conveyed to him in 1819. The judge found that there may have been in 1827 some sandy beach between the westerly portion of the rocks above high water and West Beach, that there is still a certain amount of sand on the "beach" claimed by the petitioners, but the bottom is ledgy. He adopted the contention of the respondents that so far as the right reserved as to the beach is concerned, with the right to pass over the land to improve it, the reference was either to a portion of beach which has since washed away, or else to the right in West Beach that was the property of Elizabeth Jonson conveyed to Foster in 1819, and not conveyed to Woodberry, but now incorporated into the West Beach property and that it is not involved in this controversy.

The judge was right in ruling that the deed did not present a question of doubt or ambiguity such as would make competent to show its meaning the practical construction put upon it by the parties. The construction placed upon a contract by the parties to it is not competent to prove its meaning unless the language is open to doubt. *Menage* v. *Rosenthal,* 175 Mass. 358. *O'Brien* v. *Peck,* 198 Mass. 50. *Wooldridge* v. *Wolf,* 254 Mass. 128. *Stony Brook Railroad* v. *Boston & Maine Railroad,* 260 Mass. 379. Interpreting the deed in accordance with the natural meaning of the words used in the light of the circumstances existing at the time, we are of opinion that the judge was right in reaching the conclusion that in the provision concerning the rocks the grantor reserved merely a right to take rocks which were on the southerly part of the land conveyed with a right of access to carry them away; that no exception in fee simple

of a defined area of rocky ledge was intended but that the rocky foreshore was itself conveyed by the deed. See *Burnham* v. *Hoyt*, 216 Mass. 278. The case of *White* v. *Shippee*, 216 Mass. 23, is distinguishable in its facts from the case at bar.

The petitioners further contend that even if the court should decide that a fee in the whole tract of land described in the deed subject to certain rights in the nature of easements reserved was conveyed by Foster to Woodberry, nevertheless the petitioners now have acquired title to the land in question by adverse possession, because of the lease in 1869 for fifty years by the widow and heirs of Israel Foster to Henry Lee. The lease covered the tract to which the petitioners are claiming title. Rent was paid by the lessee and his successors in title to the representative of the Foster heirs to March 1, 1919, but none since. Taxes were paid by the lessee and his successors in title until 1920. Since then taxes have been assessed to and paid by the petitioners. The respondents are successors in title to the lessee.

A tenant is estopped to deny his landlord's title. *Towne* v. *Butterfield*, 97 Mass. 105. *Hawes* v. *Shaw*, 100 Mass. 187. *Granger* v. *Parker*, 137 Mass. 228. *Curtis* v. *Goodwin*, 232 Mass. 538. In *Holmes* v. *Turner's Falls Co.* 150 Mass. 535, 547, the court said: "If one person disseises another of land, and while in possession leases the land to a tenant who continues to occupy it under his lease, the adverse possession of the tenant may be tacked to that of the landlord, and the possession of the tenant may be said to be that of the landlord." It follows from this principle that it is possible under certain conditions for a lessor to gain title to land by adverse possession through the occupancy of his lessee or tenant. *Murphy* v. *Commonwealth*, 187 Mass. 361. *Bellis* v. *Bellis*, 122 Mass. 414, 416. The taking possession under a lease for twenty years "is *prima facie* sufficient to show the acquisition of a title by prescription or adverse user . . . No doubt the possession which operates such a result must be not only actual, but open, adverse, exclusive and uninterrupted . . . But the evidence as to this is not reported; and it must be presumed that the master found the posses-

sion to be of the character which has been stated." *Attorney General* v. *Ellis,* 198 Mass. 91, 97–98. The presumption as to the character of the possession referred to in the case last cited cannot be applied in the case at bar because the trial judge made definite findings which are reported. He stated that if the record title had been in a third party possession by the respondents and their predecessors under the indenture for a period of fifty years would result in the acquirement of title by adverse possession inuring to the petitioners as heirs of Israel Foster. But the title was not in a third party. It was in Lee and he was in possession under his deeds. "His continued possession and that of his successors in title was not adverse to themselves. So far as there was occupation under the terms of the lease it was in recognition of the right and title of the lessor, but there was no recognition of a right and title in fee simple but of 'all the legal rights and easements which Israel Foster his heirs and assigns may have in or upon the premises', recognized in the deed to him, and subject to which he himself took title . . . Israel Foster his heirs and assigns had a right, reserved in his deed to Woodberry, to all the rocks lying on the southern part thereof, with a right of access therefor. The exercise of such rights would necessarily interrupt, and perhaps exclude, the owners of the land from boating, bathing and fishing. Lee procured by the indenture a right to such boating, bathing and fishing for a period of fifty years." We take the statement, that the possession of the lessee and his successors in title was not adverse to themselves, to be not a ruling of law but a finding of fact made upon evidence all of which does not purport to be reported. His conclusion that the petitioners had acquired no title by adverse possession was also a finding and not a ruling. We cannot say as matter of law that these findings could not have been made. It follows that the petitioners have failed to maintain the burden of proving all of the elements essential to establishing a title by adverse possession.

No error appears in the rulings made or in the refusal of rulings to which exceptions were saved.

*Exceptions overruled.*