Donovan, J.
INTRODUCTION
Plaintiff Cumberland Farms Inc. (“CFI”) has brought this action for liquidated damages pursuant to a purchase and sale agreement executed with the defendant, Joseph Márchese (“Márchese”). Márchese filed a third-party complaint against LaSalle Partners Limited Partnership (“LaSalle”). He seeks summary judgment against CFI which filed a cross motion for *437 summary judgment. LaSalle moves for summary judgment with respect to the third-party claims. For the reasons discussed below, Marchese’s motion is DENIED, CFI’s cross motion is ALLOWED, and LaSalle’s motion is ALLOWED.
BACKGROUND[1]
On or about October 31, 1997, Márchese executed two Purchase and Sale Agreements (“Agreements”)[2] as Buyer, pursuant to which he agreed to buy two parcels of real estate located respectively at 30 and 40 North Beach Street in Nantucket from CFI. The total purchase price was $450,000.00. Pursuant to the Agreements, Márchese paid a $20,000.00 deposit which is held in escrow by Third-Party Defendant, LaSalle, as escrow agent. On November 26, 1997, CFI executed the Agreements as Seller.
Paragraph 4(b) of the Agreements provided that Márchese was to pay an additional deposit of $25,000.00 within “3 business days after notice of [CFI’s] acceptance of [the] agreement.” Paragraph 15 of the Agreements states in relevant part: “In consideration of the provisions contained in this Agreement . . . it is understood that Buyer is purchasing the Premises in an 'as is’ condition after its opportunity to inspect same ...” Similarly, Paragraph 25(a) provides:
Buyer acknowledges that EXCEPT AS MAY BE SPECIFICALLY SET FORTH TO THE CONTRARY HEREIN, it is purchasing the Premises and any personal property conveyed herewith in an “AS-IS” and “WHERE-IS” condition “WITH ALL FAULTS” and all physical latent or patent defects, specifically and expressly without warranties, representations or guarantees of any kind, express or implied, including warranties of: condition; merchantability; habitability; fitness for a particular use; value; profitability or marketability of the Premises. Buyer acknowledges that it is not relying and has not relied upon any information, document, brochure or other literature, advertisement, map, sketch, projection, pro forma, statements, representation, guarantee or warranty that may have been given by or made by or on behalf of the Seller and that it is Buyer’s sole responsibility to undertake such due diligence and to make such legal, factual and other inquiries and investigations as Buyer deems necessary, desirable or appropriate with respect to acquiring the Premises.
The Backup Offer Addendum (“the Addendum”) to the Agreements provided in relevant part:
Notwithstanding any provision of the Agreement to the contrary, the parties acknowledge that Seller has previously entered into a contract to sell the Premises to another buyer (the “Existing Contract”) and that it has requested this Agreement from Buyer as a backup offer only. Buyer acknowledges that this Agreement shall not be binding unless and until the existing Contract by the Existing buyer or otherwise (‘Termination Event”), and Buyer and Seller comply with the notice and acceptance procedure set forth below.
In the event of a Termination Event involving the Existing Contract, Seller shall notify the highest qualifying bidder acceptable to Seller of such termination (or Seller may request Best and Final Offers from bidders clustered in competitive range). Buyer shall have a period of three business days after notice (or after the Best and Final Offer date) to confirm to Seller that it will honor this Agreement. Failure to notify Seller shall be deemed rejection of this Agreement.
On Wednesday, November 26, 1997, Guy Ponticello (“Ponticello”) of LaSalle faxed notices to Márchese advising him his offer on the Properties had been deemed acceptable by CFI. On that same day, Márchese forwarded the additional $25,000.00 deposit due on the two Properties. According to paragraph 5 of the Agreements, settlement was to be made by mail, “on or before thirty (30) days from the date of this Agreement." The thirty-day time period was “of the essence” in the agreements which were dated November 26, 1997. Settlement was to be made on or before December 26, 1997.
On December 22, 1997, CFI made a written tender of the deed and all other settlement documents by mail pursuant to Paragraph 5 of the Agreements. Marchese’s attorney returned the settlement documents by correspondence dated December 23, 1997, and expressed Marchese’s refusal to close prior to December 26, 1997. By correspondence dated December 30, 1997, CFI advised Marchese’s attorney that it would be seeking to recover damages in excess of the deposits paid by Márchese. CFI ultimately sold the Properties for $250,000.00 to another buyer on September 23, 1998, pursuant to a Purchase and Sale Agreement executed on February 24, 1998.
CFI claims that Márchese breached the two Purchase and Sale Agreements by failing to close on the property within the time period stipulated in the Agreements. Márchese, however, asserts that CFI breached the agreements by failing to send him written notice of its acceptance of Marchese’s bid via registered mail.[3] Additionally, Márchese asserts that LaSalle, the escrow agent, breached the Agreements, committed the tort of conversion, and violated G.L.c. 93A.[4] LaSalle denies these claims.
DISCUSSION
A Court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there *438 is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party demonstrates the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Summary judgment, where appropriate, may be entered against the moving party or may be entered as to certain issues, but not others which present a genuine issue of material fact. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The nonmoving party cannot defeat the motion for summary judgment merely by resting on his or her pleadings or on bare assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Application of those principles to the matter at bar results in the following analysis.
It is well-settled that under Massachusetts law the interpretation of a contract is generally a matter of law for the court. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986). In construing written contracts, words that are plain and free from ambiguity must be construed in their usual and ordinary sense where no inconsistency results or there is no controlling indication in the instrument of other intent. Massachusetts Municipal Wholesale Electric Co. v. Danvers, 411 Mass. 39, 45-46 (1991). Furthermore, a contract is to be construed to give reasonable effect to each of its provisions. J.A. Sullivan Corp, 397 Mass. at 795. Every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means of carrying out and effectuating the intent of the parties. Id.
A waiver is an intentional relinquishment of a known right. Niagara Fire Ins. Co. v. Lowell Trucking Corp., 316 Mass. 652, 657 (1944). A party may waive a breach of contract committed by an adverse party. Taxi Service Co. v. Gulf Refining Co., 252 Mass. 314, 320 (1925). Strict and full performance of a contract by one party may be waived by the other party. De Freitas v. Cote, 342 Mass. 474, 477 (1961). The issue of waiver is ordinarily one for the fact finder. MacDonald & Payne Co. v. Metallic Arts of New England, Inc. 324 Mass. 353, 356 (1949). If the facts are undisputed, however, waiver is a question of law to be resolved by the court. McCarthy v. Tobin, 429 Mass. 84, 88 n. 5.
CFI first alleges that Márchese breached the purchase and sale Agreements by failing to close on the properties within the time period stipulated by the agreements. Márchese, in turn, argues that he had no obligation to close on the properties because CFI failed to send him written notice via registered mail of its acceptance of Marchese’s offer pursuant to the addendum and that CFI failed to disclose the wetland restrictions on the properties. CFI argues that in the event it had an obligation to notify Márchese by sending written notification via registered mail of its intention to accept his offer, Márchese waived his right to that mode of notification by sending the second $25,000.00 deposit based solely on the acceptance notice faxed by LaSalle. Márchese claims that he never waived his right to written notification of CFI’s intent to accept his offer.[5] Assuming Marchese’s obligations were conditioned upon CFI giving written notice of its intention to accept Marchese’s offer pursuant to the addendum, which CFI expressly denies, and assuming that such notice was not given, which CFI also denies,' Marchese’s conduct qualified as a waiver of the notice condition. McCarthy v. Tobin, 429 Mass. 84 (1999): Church of God in Christ v. Congregation Kehillath Jacob, 370 Mass. 828 (1976). In McCarthy, the Supreme Judicial Court held that a seller waived a deadline for the buyer to execute a purchase and sale agreement, where the seller did not provide a draft purchase and sale agreement until after the deadline had passed. Likewise, in Church of God, the Supreme Judicial Court found that acceptance, by the obligee, of payments after the due date for those payments had passed constituted a waiver of the due date by the obligee.
Márchese contends that this addendum requires that CFI send Márchese written notice by certified mail of its acceptance of his bid. The addendum does not specify the mode of notification required. It is undisputed that Márchese received two faxes from CFI in which CFI gave notice to Márchese of its intent to accept his bid. This is evidenced by Marchese’s deposition testimony in which Márchese testified that he received two faxes from LaSalle which informed him of CFI’s intent to accept his bid on the properties.[6] (Márchese depo. at 42-45.)
The first letter (Exhibit H) provides in pertinent part:
Your bid on 40 North Beach Street, Nantucket, MA has been deemed acceptable by Cumberland Farms. This letter will serve as notice. We are in receipt of your Initial Earnest Money Deposit in the amount of $10,000. Per the terms of your contract, you are required to submit an Additional Earnest Money Deposit in the amount of $12,500.00 for a *439 total Earnest Money Deposit of $22,500.00 or 10% of your bid amount.
The fax for the second parcel that Márchese received, contains identical language to Exhibit H except that it pertains to 38 North Beach Street, Nantucket. It is undisputed that Márchese read the faxes and acted by sending the additional deposit.
Assuming the addendum required CFI to send written notice by certified mail, Márchese waived such notice by paying over $25,000 to LaSalle. In his deposition, Márchese admits although he believed that the Agreements called for notice of CFI’s bid acceptance by certified mail, he nevertheless sent a second deposit for $25,000 as called for by the faxes. After sending the additional $25,000, Márchese sent a fax to LaSalle requesting confirmation that it was received. Such conduct signified his waiver of any provision, actual or implied, of notice by certified mail as a condition precedent. See McCarthy v. Tobin, 429 Mass. 84, 88-89 (1999) (holding that seller’s acceptance of buyer’s purchase and sale agreement and deposit after the time set for performance constituted waiver of the deadline set for buyer’s performance).
Márchese impleaded LaSalle as a third-party defendant asserting three claims against LaSalle: (1) breach of contract; (2) conversion; and (3) violation of G.L.c. 93A. LaSalle moves for summary judgment on each claim.
First, Márchese alleges LaSalle breached its obligations under the Agreements by failing to return his deposits. In his deposition, however, Márchese explained that the breach of contract claim was based solely on the Agreements. He acknowledged there was no other written or oral agreements between himself and CFI or LaSalle. He also admitted he did not have any agreement with LaSalle. Id. Marchese’s claim for breach of contract against LaSalle fails.
One can only be liable for breach of contract for a contract to which one is a party. Jurgens v. Abraham, 616 F.Sup. 1381, 1386-87 (D. Mass. 1985). Furthermore, one who deals with an agent of a fully disclosed principal may only seek recovery from the principal for any contract-based claims. I.R.S. v. Blais, 612 F.Sup. 700, 706 (D. Mass. 1985) (a third party who voluntarily deals with an agent who acts within the scope of his authority must accept the risk of enforcing the contract against the principal); Restatement (Second) Agency, §328 (an agent, making a contract only on behalf of a completely disclosed . . . principal who he has the power to bind, does not thereby become liable for its nonperformance).
It is undisputed that LaSalle is not a party to the Agreements.[7] The first paragraph of the Agreements explicitly states that the Agreements are between CFI and Márchese. Furthermore, the Agreements repeatedly reference obligations of the Buyer and Seller. Moreover, CFI and Márchese are the only signatories to the agreements. It is undisputed that Márchese understood LaSalle’s role as an agent. Consequently, any liability for breach of the agreements lies with the principal CFI, not with LaSalle.
Secondly, Márchese claims conversion by LaSalle because of LaSalle’s refusal to turn over the deposits to Márchese after the deal failed. LaSalle holds the deposits pending resolution of the dispute between CFI and Márchese.
In order to prove conversion, the plaintiff must show that the defendant exercises dominion over the plaintiffs personal property, without right. Row v. Home Say. Bank, 306 Mass. 522, 525 (1940). Defendant may have wrongfully exercised dominion over the property by either appropriating the property, by depriving the rightful owner of the property, or by destroying the property. Spooner v. Holmes, 102 Mass. 503, 506 (1869). A conversion may also occur where a person who rightfully came into possession of the property refused to deliver the property upon the demand of a person having title and a right to immediate possession of the property. Marrs v. Barbeau, 336 Mass. 416, 422 (1957).
To maintain an action for conversion, the plaintiff must show a general or special ownership in the property and a right to immediate possession. MacNeil v. Hazelton, 306 Mass. 366, 367 (1940). A demand and refusal do not constitute a conversion where the plaintiff does not have title and an immediate right to possession. Mazeikis v. Sidlauskas, 346 Mass. 539, 544-45 (1963). Thus, one who has a right of property in a chattel, but not possession or an immediate right to possession, cannot maintain an action for conversion. Marder v. Moose Hill Spring Tonic Co., 286 Mass. 126, 131 (1934). The Restatement (Second) of Torts §240 provides “(0]ne in possession of a chattel who is in reasonable doubt as to the right of the claimant to its immediate possession does not become a converter by making a qualified refusal to surrender the chattel to the claimant for the purpose of affording a reasonable opportunity to inquire into such right.”
In the action at bar, Márchese did not have a right to immediate possession of the money. Furthermore, LaSalle had a good faith basis for withholding the escrow money.
Pursuant to paragraph 12 of the Agreements, the non-breaching party is entitled to the escrow deposit. On December 8, 1997, Márchese demanded return of the money. On December 9, 1997, CFI disputed Marchese’s entitlement to return of the deposits, asserting that Márchese had been given notice of the Termination Event and therefore, was required to close on the properties. Marchese’s failure to close by December 22, 1997, was a breach of the Agreements. As of December 8, 1997, LaSalle was aware of the dispute between Márchese and CFI regarding entitlement to the escrow deposit.
*440 At that point, Márchese was not entitled to possession of the deposits because the claim of breach was hotly contested. Moreover, LaSalle filed a claim for interpleader to resolve the issue of who possessed the right to the funds deposited in escrow.[8] Márchese has not proven a conversion but only the fact LaSalle is a stake holder.
Marchese’s final claim against LaSalle is one for violation of M.G.L.c. 93A, §9. Márchese posits two bases for his M.G.L.c. 93A claim. First, Márchese argues LaSalle withheld information regarding the restricted use of the properties. Second, Márchese argues LaSalle’s failure to return his deposit constituted unfair and deceptive acts.
LaSalle argues that the language of the agreements explicitly states that the transaction was an “as is” sale with no warranties. Second, LaSalle argues that its refusal to return Marchese’s deposit was not unfair and deceptive because it acted in good faith in so refusing and because Márchese did not have a right to return of the deposit.
In order for a plaintiff to prevail on his claim under M.G.L.c. 93A, §9, he must demonstrate that he suffered injury as a result of the defendant’s unfair and deceptive acts. M.G.L.c. 93A, §9. The mere fact that a deal goes sour does not give rise to a M.G.L.c. 93A claim, the plaintiff must establish that the defendant acted in an unfair and deceptive manner. Pappas Indus. Parks, Inc. v. Psairos, 24 Mass.App.Ct. 596, 600 (1987) (citations omitted).
Marchese’s claim against LaSalle for not disclosing the restricted use of the properties also fails. Paragraph 25(a) of the Agreements that Márchese signed explicitly provides:
Buyer acknowledges that EXCEPT AS MAY BE SPECIFICALLY SET FORTH TO THE CONTRARY HEREIN, it is purchasing the Premises and any personal property conveyed herewith in an “AS-IS” and “WHERE-IS” condition “WITH ALL FAULTS” and all physical latent or patent defects, specifically and expressly without warranties, representations or guarantees of any kind, express or implied, including warranties of: condition; merchantability; habitability; fitness for a particular use; value; profitability or marketability of the Premises. Buyer acknowledges that it is not relying and has not relied upon any information, document, brochure or other literature, advertisement, map, sketch, projection, pro forma, statements, representation, guarantee or warranty that may have been given by or made by or on behalf of the Seller and that it is Buyer’s sole responsibility to undertake such due diligence and to make such legal, factual and other inquiries and investigations as Buyer deems necessary, desirable or appropriate with respect to acquiring the Premises.
Furthermore, Márchese admitted LaSalle made no representations concerning the properties or the bid process. He also admitted he did not ask any questions regarding restrictions on the properties. In fact, Márchese admitted he had very limited communications with LaSalle. Moreover, Márchese acknowledged he knew about an allegedly bad reputation of CFI before bidding on the Properties and was fully aware of [CFI’s] past dealings with péople so that he “was on his toes from the beginning and had his eyes wide open at all times.”
The disclaimer together with Marchese’s admissions demonstrates sufficient evidence to charge LaSalle with engaging in unfair and deceptive acts. As a result, summary judgment will enter in favor of LaSalle and all counts of Marchese’s third-party complaint against LaSalle will be dismissed with prejudice.
Márchese, in his deposition, acknowledged he has no evidence which suggests LaSalle withheld the escrow deposit knowing Márchese was entitled to it. I determined that LaSalle did not wrongfully withhold the escrow deposit. Marchese’s claim fails.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant-Marchese’s motion for summary judgment be DENIED. It is further ORDERED that plaintiff- ■ CFI’s crossmotion for summary judgment be ALLOWED and that third-party defendant-LaSalle’s motion for summary judgment be ALLOWED. This case will now proceed to an assessment of damages.

In evaluating a motion for summaiyjudgment, this Court must rely both on facts not in dispute and on disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts as set forth in this decision are presented in the light most favorable to the defendant and should not be misunderstood as findings of the Court.

The provisions of the two agreements executed between CFI and Márchese differ from each other in only one aspect. One of the agreements refers to the parcel of land located at 40 North Beach Street, Nantucket, while the other agreement refers to the parcel of land located at 38 North Beach Street.

CFI sent notice of its acceptance of Marchese’s bid via fax.

Márchese made these claims against LaSalle by way of his third-party compliant.

Marchese bases this argument on the Statute of Frauds. Márchese argues that the Statute of Frauds requires any modification of a contract for the sale of land be in writing. Márchese misconstrues CFI’s argument. CFI does not argue that its contract with Márchese was modified. To the contrary, CFI argues that Márchese waived a performance condition that CFI send Márchese notice of its acceptance of Marchese’s bid by certified mail to the extent such a performance condition existed. CFI does not concede that such a notice provision exists under the Agreements.

These two faxes are marked as Exhibit H and Exhibit I, respectively.

Marchese’s third-party complaint does not assert that LaSalle is a party to the agreements. The third party complaint acknowledges that Márchese paid the Deposits to “LaSalle as escrow agent on two real estate purchase and sale agreements.” (Emphasis added.)

 LaSalle sought to deposit the escrow with the Court, by filing a motion pursuant to Mass.R.Civ.P. 67, to distribute upon the ultimate resolution of the dispute between CFI and Márchese. Should the Court grant summary judgment in favor of LaSalle on Marchese’s claims for conversion and violation of M.G.L.c. 93A, LaSalle remains willing to deposit the escrow with the Court, if the Court so orders.