AGAMEMNON PETEROS *vs.* HARICLEA PETEROS & others.

Suffolk.    October 2, 1951. — February 28, 1952.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Equity Pleading and Practice*, Master: hearing on report, findings, confirmation of report; Findings by judge. *Husband and Wife*, Nonsupport. *Accounting. Laches. Equity Jurisdiction*, Laches. *Mortgage*, Of personal property: validity.

Statement by QUA, C.J., of courses open to a judge in a suit in equity upon filing of a master's report.

It was error for a judge in a suit in equity, without passing on exceptions to a master's report filed or confirming the report, to hear some evidence on an issue already heard by the master and to make findings of fact not wholly based on the evidence so heard; and upon reversal of an erroneous final decree the suit was remanded to the trial court for

further proceedings, the master's report to be treated as filed but not acted on and the evidence heard and the findings made by the judge to be disregarded.

Findings in a report by a master in a suit in equity have no standing until the report is confirmed.

A wife has no cause of action against her husband for past nonsupport which can be the subject of set-off in a suit in equity by him for an accounting by her.

Although a wife was under a duty to return to her husband on demand property, or its value, of a store owned by him and operated by her while he was confined in hospitals and to account to him for the profits received by her, she was entitled in the circumstances to a credit in the accounting for the value of her services.

Laches was not shown to be a defence to a suit by a husband against his wife to establish his ownership of a store operated by her for several years while he was confined in a mental hospital, and for an accounting by her, where it appeared that he made demand on her for a return of the store about a year after he was discharged from the hospital and commenced the suit a month after the demand.

A mortgage given by a wife on stock and fixtures of a store owned by her husband and operated by her was invalid as against him where it appeared that at the time the mortgage was executed both parties thereto knew that the husband was confined in a hospital as an insane person and that a guardian, whom they did not consult, had been appointed for him, that they did not act in good faith, and that money expended by the mortgagee for bills of the store, for which the mortgage was given, was not the mortgagee's money but came out of the store.

BILL IN EQUITY, filed in the Superior Court on September 9, 1948.

The suit was heard by *Donnelly*, J., following the filing of a master's report.

*P. L. Keenan*, (*J. J. Gavin* with him,) for the plaintiff.

*J. G. Schumb*, for the defendant Hariclea Peteros.

QUA, C.J.  This is a suit in equity by a husband against his wife, her brother, and others who were added as defendants after the coming in of the master's report, as hereinafter appears.  In the Superior Court the bill was dismissed.  The husband appeals.

In rough outline the bill alleges that the husband owns and for many years personally operated a store in the Jamaica Plain district of Boston; that in August, 1943, and thereafter until July, 1947, he was confined in hospitals for

mental patients; that upon his confinement the wife took over the store and continues in control and possession; that she has failed to account for the profits of the business and refuses to return the store to the plaintiff; that she has procured a lease of the store premises to be made to herself and, without notice to the plaintiff or to his then guardian, has given to her brother, the defendant Pagler, a chattel mortgage on the stock, equipment and fixtures; and that Pagler then knew that the plaintiff had been adjudged insane and was under guardianship. The principal prayers are that the court establish the plaintiff's ownership in the stock, equipment, fixtures, and good will; that the wife be ordered to deliver possession to the husband; that she be determined to be a constructive trustee of the lease and be ordered to assign all her rights under it to the husband; that she account to him; and that Pagler be ordered to discharge the mortgage.

The substance of the master's findings material to this decision is as follows. In August, 1943, the husband was the sole owner of the business. He sold soda, ice cream, soft drinks, candy, tobacco, light groceries, and papers. By the summer of 1943 he had begun to drink to excess. On August 27, 1943, he was committed for observation and thereafter was continuously confined to an institution until he was released "on probation" in July, 1946, and about a year later was "discharged as improved" from the Boston State Hospital. The records there show "Diagnosis — determined diagnosis with paranoia and paranoid conditions, alcoholic psychosis, other types." He was advised by the doctors to keep away from his family and did so by living with his brother and working in his brother's store from May to November, 1947. From that time until May, 1948, he was in and out of a veterans' hospital. On August 8, 1948, he wrote his wife requesting the keys to the store. This was his first demand for the return of the store. The husband "did not abandon or give to . . . [the wife] the store and business at any time." His absence from the store was "involuntary" at least until his final discharge

from Boston State Hospital in July, 1947. He was under guardianship from February 17, 1945, until September 15, 1947. After the husband was confined on August 27, 1943, the wife operated the store with the assistance of the children of the parties. When she took over she made no inventory and kept no records and "is now not able to give any account of the earnings from the store until the year 1947." Because "no figures were available" the master made no finding as to the earnings of the business between August 27, 1943, and January 1, 1947. In the year 1947 the net profit was $5,039.83. In 1948 the net profits to November 15, when the hearing before the master began, were $4,267.80. The husband made no contribution toward the support of the wife and family from August 27, 1943, when he was confined "to the present," except that the Veterans' Administration paid to her $1,422.66 as his pension benefits. He paid no bills of the store after he was committed, but since the wife operated the store the sum of $662.43 for back rent owed by the husband has been paid to the owners of the building. The wife obtained from the owners a lease of the store premises in her own name, which, however, expired October 1, 1951.

As to the mortgage to Pagler the master found these facts: On May 9, 1947, the wife acting in her own name gave Pagler a note and mortgage for $1,788.74 on all stock and fixtures of the store. At that time the husband was in the Boston State Hospital as an insane person. Both the wife and Pagler knew this and did not consult the guardian who they knew had been appointed. Neither party to the mortgage acted in good faith. Pagler had paid certain bills for the store, but the money had come out of the store and was not Pagler's money. Pagler did not "use his own money" in the mortgage transaction.

Upon the coming in of the master's report several courses were open to the judge. See *Minot* v. *Minot,* 319 Mass. 253, 257–258. He could have dealt with the objections to the report filed by each of the parties and could have confirmed the report in whole or in part, or he could have recommitted

the case to the master for such further findings as he deemed necessary, or he could have ordered all the evidence received by the master to be reported (a course seldom adopted) and then could have rejected any findings of the master which he deemed plainly wrong, or he could have discharged the report altogether and reheard the entire case himself or recommitted the case to another master. He adopted none of these courses. Instead, an amendment was allowed to the bill introducing as defendants for the first time the owners of the real estate where the store was located (because of the lease), and thereafter the judge heard the testimony of one of those owners. No other testimony seems to have been offered by any party at this time. If the judge had heard only evidence pertaining to the lease as a separable issue and had himself heard all the evidence offered on that issue and had considered no other evidence on that issue, this course also would have been permissible. *McClintic-Marshall Co.* v. *Freedman,* 274 Mass. 558, 561–562. *S. M. Spencer Mfg. Co.* v. *Spencer,* 319 Mass. 331, 339. But since findings of a master in a suit in equity are not merely evidence as are findings of an auditor before a jury, but when confirmed, are binding upon the judge as far as they go, it is difficult to see how the judge could use evidence that he heard himself on issues that he did not hear completely to control or qualify the findings of the master who presumably heard all the evidence offered on those issues. In other words, if the judge decides to take a separable issue or question of fact away from the master and to hear it himself, he must hear it in its entirety. There can be no sharing of responsibility between the judge and the master for a single indivisible finding of fact. In the present case it is not clear to us just what use the judge made of the oral evidence which he heard. He made findings of fact which were obviously not based wholly upon the evidence he had heard. Many of them were taken from the master's report and need not have been repeated by the judge if the master's report was to be confirmed. Others were legitimate inferences which the judge could draw from findings of the master,

while still others, such as that in July, 1943, the good will of the business was "worthless" and the stock and fixtures "all but worthless," were not found by the master and could not in our opinion properly be inferred from anything the master did find. We discover no proper basis for these findings. We are left in doubt whether the judge did not treat the master's findings merely as evidence to be weighed with and qualified or controlled by the evidence he heard himself, although he had not heard all the evidence on the points involved. We have dealt with this subject at some length because the case must go back on account of other errors entering into the decree, and it is important that the proper practice be understood and clearly followed.

To begin with, the exceptions to the master's report have never been passed upon, and the report has never been confirmed. The findings of the master are entitled to no weight whatever until established by confirmation. *Meehan* v. *North Adams Savings Bank,* 302 Mass. 357, 362. *Malden Trust Co.* v. *George,* 303 Mass. 528, 529. *Minot* v. *Minot,* 319 Mass. 253, 257. The manner in which the judge dealt with the master's findings makes it impossible to say, as has sometimes been said, that he impliedly confirmed the report. See, for example, *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 200; *Cali* v. *Caliri,* 254 Mass. 488, 490. The master's report should now be dealt with in conformity to equity practice. The findings of the judge and the evidence heard by him must be disregarded for the reasons already indicated and because in part they deal with the matter of the lease, which has become moot, as hereinafter appears.

The trial judge was further in error in ruling, as he seems to have done, that the wife's obligations to the husband in the matter of accounting for his property and business which she took over can be set off against his liability to her for failure to support her and the children since he was committed as a mental patient. The wife has no cause of action against the husband for past nonsupport which can be the

subject of set-off in this proceeding. *Gediman* v. *Cameron*, 306 Mass. 138, 140–141. *Lyon* v. *Lyon*, 318 Mass. 646.

The stock, equipment, fixtures, and good will of the store and the profit from their use were the property of the husband. He cannot be practically deprived of them in the manner effected by the present decree. He is entitled to recover his property or its value, whether the value be great or small, and to an accounting of profits derived therefrom. So far as appears no money not produced by the business went into it after he left. All there is now is the product of what belonged to him, plus the labor of the wife and children. On the other hand, the position of the wife was a difficult one. She had to support herself and the children of the parties. She chose to do so through continuing his business. This may well have been the best means available both of supporting the family and of preserving the husband's property. · There is no finding of bad faith on her part, except in connection with the mortgage. It is not surprising if in good faith she had come to regard the store as her own. She had operated it for about five years before he made any demand upon her and appears to have been more successful than he had been. Although in law she has no right to keep her husband's property or its product, yet in the circumstances we think that in the accounting she is entitled to a credit for her services which may well be, in effect, a very substantial offset against what is due from her. See Restatement: Trusts, § 243, Restitution, § 158; Scott on Trusts, § 243; *Rowland* v. *Maddock*, 183 Mass. 360; *Shulkin* v. *Shulkin*, 301 Mass. 184, 193–194; *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1; *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57, 66–67.

The wife claims laches, but laches is an affirmative defence (*Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288) and has not been found. No facts found require the conclusion of laches, especially in view of the facts that the husband was confined to a hospital for mental patients during most of the time while the wife operated the store and although "released on probation" in 1946 was

not "discharged as improved" until July, 1947, about a year before he demanded that the store be returned to him.

It is conceded that any question of the husband's right to recover the lease has become moot, since the lease has now expired. The making of the lease to the wife terminated any tenancy at will which the husband then had. *Howard* v. *Merriam*, 5 Cush. 563, 583. *Chester A. Baker, Inc.* v. *Shea Dry Cleaners Inc.* 322 Mass. 311, 313. He no longer has any right in the real estate. It follows that the final decree may stand in so far as it dismisses the bill as to the defendants added by amendment.

The mortgage on the husband's property given by the wife to Pagler should have been declared void as to the husband.

The master's failure to find any profits from August 27, 1943, to January 1, 1947, because "no figures were available" does not seem satisfactory. It is often possible to find from evidence some minimum amount which must have been realized, even if exact figures are not available. If there was no evidence from which the master could make a finding of any amount at all, it would seem that he should so state in express terms. Or possibly an opportunity should be afforded to present further evidence to the master. See *Cavazza* v. *Cavazza*, 317 Mass. 200, 208–209.

Although we have indicated that certain further findings may be necessary or desirable we do not intend to prescribe the procedure to be adopted by the Superior Court further than as herein expressly stated. That court should be free to deal with the case as circumstances indicate to be proper, taking the case as one in which a master's report has come in but has not yet been acted upon.

The result is that the final decree dismissing the bill is affirmed as to the defendants added by amendment, and is reversed as to the original defendants. The case is to stand for further proceedings consistent with this opinion.

*So ordered.*