IGNAS MAZEIKIS *vs.* ANTANAS SIDLAUSKAS.

Plymouth. November 7, 1963. — December 5, 1963.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* Implied, For services. *Equity Pleading and Practice,* Rehearing.

Findings by a master in a suit in equity to recover for services performed by the plaintiff in renovating a house of the defendant, his father-in-law, in part of which the plaintiff and his wife lived for a time, paying rent to the defendant, and for services performed by the plaintiff later on a farm to which the defendant had moved and on which the plaintiff lived, paying the defendant for room and board, after the plaintiff and his wife had been divorced, did not require a conclusion that there was any express or implied promise by the defendant to pay for the plaintiff's services, and the plaintiff was not entitled to recover. [542–544]

Where a master's findings in a suit in equity would permit recovery from the defendant for a conversion of furniture if viewed as findings that, at the time of demand, the plaintiff owned an ascertainable portion thereof, but the findings with respect to the furniture were so incomplete and ambiguous that a proper conclusion could not be reached, there must be a rehearing concerning the furniture.    [544–545]

BILL IN EQUITY filed in the Superior Court on April 18, 1960.

The plaintiff appealed from a decree by *Taveira, J.,* confirming a master's report as modified, and from decrees by *Tomasello, J.,* denying a motion to recommit to the master and dismissing the bill.

*Kenneth E. MacMullen & Ovide V. Fortier,* for the plaintiff, submitted a brief.

*Ira L. Lipman* for the defendant.

CUTTER, J.    This bill in equity alleges that Mazeikis and Sidlauskas orally agreed (a) to purchase property on Hovendon Avenue, Brockton, in their joint names, improve it, sell it, and divide the profits, and (b) to acquire land in Bridgewater, by the proceeds of a mortgage on the Hovendon Avenue property, and to divide the profits after improvement and resale of the property. An accounting was sought. After a master had filed his report, the bill was amended to include allegations (a) expressed essentially as common counts for work done but without any bill of particulars, that Sidlauskas owed Mazeikis $1,200 with interest, for work done on the Hovendon Avenue property, and $524 for work done and materials expended on the Bridgewater property, and (b) that Sidlauskas had converted furniture worth $1,000 owned by Mazeikis.

The master's findings may be summarized. "[T]here was no partnership nor joint enterprise." Mazeikis married Sidlauskas's daughter. Upon arrival in the United States from Germany, the younger couple went to live with Sidlauskas and his family in a house on Winter Street in Brockton, and paid $25 a week for their room and board. In August, 1952, Sidlauskas bought the Hovendon Avenue property, on which stood a two family house, for $2,000.

Mazeikis, Sidlauskas, and others renovated the house. Mazeikis and his wife moved into one side of the house when the work was partly done and Sidlauskas and his family moved into the other side. Mazeikis thereafter continued to help to renovate the premises and contributed an undetermined number of hours (of which no record was kept) to the work, but paid no money toward purchase of the materials used. Sidlauskas bought such materials at a cost in excess of $4,000. Mazeikis and his wife paid $30 a month for rent to Sidlauskas. In 1956, Sidlauskas bought a farm in Bridgewater and moved out of the Hovendon Avenue property. The apartment which he had occupied was then rented for $16 a week, which was paid to him. Mazeikis, at least thereafter, paid "$11.50 a month plus the water" instead of the $30 a month which he had been paying. When Sidlauskas moved, he offered to sell the Hovendon Avenue house to Mazeikis and his wife for the amount of a $7,000 mortgage. Mazeikis was interested but his wife was not. Sidlauskas rented the premises until 1959, when he sold the house for $11,000.

Mazeikis and his wife were divorced in 1958. He was then no longer living in the Hovendon Avenue house but his wife and child were still there. After the divorce, Mazeikis lived with Sidlauskas on the Bridgewater farm for about four months. He paid $10 a week for room and board and performed services around the farm. He also advanced $24 for work done on the farm by one Urba. The master found that, if material, the fair value of the services performed by Mazeikis at Bridgewater was $500, and of those performed at Hovendon Avenue was $1,200.

While Mazeikis and his wife "were living together they purchased . . . furniture which cost approximately $3,000." Mazeikis "introduced evidence . . . which showed that approximately half of this furniture was purchased in his name alone." The furniture was in the Hovendon Avenue house (then occupied by Mrs. Mazeikis and their child) at the time of the divorce. Mrs. Mazeikis asked Sidlauskas to move the furniture to the Bridgewater farm, where she

went to stay for a few days. She then departed for Honolulu leaving the furniture with Sidlauskas. On July 6, 1959, Mazeikis made written demand on Sidlauskas for the furniture which then had a fair value of $1,000. Mazeikis's attorney made a further demand on July 14, 1959. Sidlauskas refused to turn it over to Mazeikis. In February, 1961, Mazeikis's former wife arranged to have the furniture moved to California.

At Mazeikis's request the master furnished summaries of the evidence upon which he based his findings concerning the fair value of Mazeikis's services at Hovendon Avenue and in Bridgewater. These summaries were requested so that the court would be able to pass upon the question of law whether Mazeikis was entitled to be paid for his services. The evidence, describing the work done at both places, justified findings as to the value of the services. The master stated that he believed testimony that Sidlauskas told one Baltazar that, if the former sold the Hovendon Avenue house, he was going to give $1,000 to Mazeikis.

Both Mazeikis and Sidlauskas filed objections to the master's report. By interlocutory decree, the exceptions of Mazeikis were overruled and those of Sidlauskas (principally directed to the findings about the fair value of Mazeikis's services and requesting a finding that Mazeikis's services were rendered gratuitously) were sustained. The findings about the furniture and about the fair value of Mazeikis's services were struck from the report and the report was confirmed. A later motion by Mazeikis to recommit the report to the master was denied. Mazeikis appealed from both interlocutory decrees and from a final decree dismissing the bill.

1. We first consider the propriety of the trial judge's action in sustaining Sidlauskas's exceptions to the master's report, so far as those exceptions relate to the findings concerning the fair value of Mazeikis's services.

The findings do not require us to conclude that there was any express or implied contract to pay for Mazeikis's services either at Hovendon Avenue or at Bridgewater. There

is no finding of any promise and the subsidiary findings suggest no such agreement.

When the first work was done, Mazeikis and his wife were living at Sidlauskas's Winter Street house and paying what may well have been an insufficient amount for their room and board. Thereafter, when Mazeikis and Sidlauskas were each occupying an apartment in the Hovendon Avenue house, Mazeikis was paying only $30 a month for his apartment in one half of the house, whereas when Sidlauskas moved to Bridgewater, the other apartment was rented for the more substantial amount of $16 a week. The summary of evidence submitted by the master in support of his finding about the value of Mazeikis's work at Hovendon Avenue showed no more in respect of an agreement than that Mrs. Mazeikis testified that Sidlauskas had told Mazeikis, "I won't forget you. I will help you sometime," an indefinite expression of gratitude and intended future benevolence rather than a basis for expecting direct compensation.

There is somewhat more basis (than in the case of the Hovendon Avenue work) for implying an agreement by Sidlauskas to pay for the work at Bridgewater. By this time Mazeikis had been divorced from Sidlauskas's daughter, so the work was less likely than before to represent intrafamily coöperation. Mazeikis was paying $10 a week for room and board for these four months. For about seventeen to eighteen weeks, $500 of work would represent some $27 to $30 worth of work a week, a large amount of free work to be given for room and board in addition to the cash payment. The summary of Mazeikis's testimony relating to the findings about this work indicated that Sidlauskas "said he would pay him extra for the work . . . done in Bridgewater." The master, however, made no explicit finding of any agreement.

Mazeikis failed to establish the joint venture originally alleged and, in effect, thereafter attempted to adopt another somewhat inconsistent theory of his case to fit findings which did not completely support the new theory. In the absence of explicit findings that Mazeikis, on the basis of

Sidlauskas's words and conduct, reasonably. expected Sidlauskas to pay him for his work (as distinguished from assisting him to obtain the use of various premises and board on favorable terms), we conclude that Mazeikis has not established any express or implied agreement for such payment. See *Douillette* v. *Parmenter,* 335 Mass. 305, 307. As to Mazeikis's $24 payment to Urba, there is no finding that this was expressly or impliedly authorized by Sidlauskas.

2. To show conversion of the furniture, Mazeikis must establish that at the time of his demands for the furniture, he had an immediate right to its possession. See *MacNeil* v. *Hazelton,* 306 Mass. 366, 367; *Marshall Vessels, Inc.* v. *Wright,* 331 Mass. 487, 489; Restatement: Torts, § 237; Prosser, Torts (2d ed.) § 15, at p. 74; Harper and James, Torts, §§ 2.27, 2.28. See also *Marrs* v. *Barbeau,* 336 Mass. 416, 422, where title in the person making the demand was shown at the time of its refusal. There are no findings about the grounds of Sidlauskas's refusal of Mazeikis's demand (see Restatement: Torts, §§ 238, 240) or that Mazeikis had such title to some or all of the furniture, or such right to its immediate possession, when the demands were made, as clearly to make the refusal wrongful. The somewhat general findings, as to the purchase of the furniture and Mrs. Mazeikis's possession of it after the divorce, leave Mazeikis's standing to demand it from Sidlauskas in doubt. In any event, the findings strongly suggest that Mazeikis was not entitled to demand all the furniture. See *Baker* v. *Seavey,* 163 Mass. 522, 527.

That the findings with respect to the furniture are incomplete and ambiguous is not surprising, for there was slight. if any, occasion to make them under the original bill, and the bill was not amended to allege a conversion until after the master had filed his report. The judge, however, allowed the amendment at the same time he dealt with the master's findings concerning the furniture. Although these findings were irrelevant to the original theory of the bill, they would permit recovery for a conversion if viewed as findings that, at the time of the demand, Mazeikis owned an

ascertainable half of the furniture worth $1,000 (or half of that sum). It is far from clear what these findings were intended to mean and we think that they were insufficient to permit the trial judge and this court to reach a proper conclusion. Accordingly, the trial judge either (1) should have refused to allow the amendment adding the allegations of conversion, or (2) should have recommitted[1] the report to the master for further findings (and rehearing if necessary), concerning Mazeikis's title to the furniture and claims to its possession (as of the dates of his demands). See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 223–225; *Tallman* v. *Marion,* 340 Mass. 376, 379–380.

Whether the necessary rehearing concerning the furniture should be before the court or a master is for the Superior Court to determine. So far as the master's report deals with other issues, there appears to be no occasion for its revision.

The interlocutory decrees and the final decree are reversed. The suit is to stand for further proceedings in the Superior Court consistent with this opinion.

*So ordered.*

---

[1] The judge also could have heard the whole of this separable issue himself. See *Peteros* v. *Peteros,* 328 Mass. 416, 419; *Fisher* v. *MacDonald,* 335 Mass. 429, 431.