*Southern District*

### REGAL FLOOR COVERING, INC.

**v.**

### A. P. CONSTRUCTION CO., INC.

*Present*: Nash, C.J., Cox & Owen, JJ.

Case tried to *Driscoll, J.* in the Second District Court of Bristol No. 23379-R.

*Cox, J.* This is an action of tort for conversion of carpeting, and for the same cause of action, a count in contract implied by law for recovery of the value of the carpeting. The defendant's answer is a general denial and a denial of the plaintiff's ownership. There was a finding for the defendant.

The plaintiff claims to be aggrieved by the denial of four of its requests for rulings and by the admissions and exclusion of evidence. Argument was confined only to two of the requests which the justice denied. They are

."3. The evidence warrants a finding that the plaintiff rescinded the sale of said carpeting within a reasonable time after it discovered that Mr. and Mrs. James Carreiro did not own the house in which it was installed."

"6. The evidence warrants a finding that the defendant converted said carpeting to its own use, against the right of the plaintiff."

In *September* 1964, Charles Dolinsky, the plaintiff's president and general manager, by pre-arrangement met with Mr. and Mrs. James Carreiro at 15 Picard Court, Swansea. Albert Picard, the president and general manager of the defendant was also present. The Carreiros informed Dolinsky that they had bought the dwelling at 15 Picard Court and wished to buy carpeting to cover the floors in several rooms in the house. Picard informed Dolinsky that he had recommended the plaintiff to the Carreiros and hoped that the plaintiff would "treat them right". As a result of the meeting the plaintiff agreed to sell and install, and the Carreiros to buy, the carpeting for $1280.00. The Carreiros made a deposit of $200.00 on account of the price of the carpeting.

The carpeting was installed on October 5 and 6, 1964 in compliance with the Carreiros instructions. There was evidence that while the carpeting was being installed, the plaintiff's representative who was installing the

carepting observed to Picard, who was present four or five times during installation, "This is a very big house", and that Picard replied "I don't know where the Carreiros are going to get the money to pay for it, but I don't care, as I have a $1,500.00 deposit." This information was not communicated to the plaintiff.

The report states that although the carpeting was a wall to wall type, it remained personal property and did not become part of the building. The Carreiros have not paid the balance due for the carpeting.

The plaintiff believed that the house in which the carpeting was installed was owned by the Carreiros. Soon after its installation Dolinsky spoke to the Carreiros about payment. He then learned that the Carreiros did not own the house. Immediately Dolinsky called Picard on the telephone and told Picard that he had advised the Carreiros that he had cancelled the sale and demanded that Picard permit him to remove the carpeting. Picard refused permission. Dolinsky testified that Picard in refusing, said ". . . *that carpeting belongs to the house now."* Picard's version was "I can't let you remove it as I do not know whether the carpeting belongs to you or to the Carreiros." Thereafter, Picard sold the house *and carpeting* to another person. At the time of the demand and refusal relative to its removal, the carpeting had a fair market value of $1,000.00.

*The justice specially found that title to the carpeting had passed to the Carreiros.*

■ By the provisions of G.L. c. 106, §2-401 (2)

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest . . ."

There was no reservation of a security interest by the plaintiff, and there being no evidence of any explicit agreement between the plaintiff and the Carreiros to the contrary, title to the carpeting passed to the Carreiros upon its delivery and installation at 15 Picard Court. The finding that title had passed from the plaintiff to the Carreiros was therefore warranted.

However, we must decide whether there was evidence which would warrant a finding that the plaintiff rightfully cancelled the sale and evidence which would warrant a finding of conversion by the defendant. If there were such evidence then the plaintiff was entitled to affirmative rulings on requests numbers 3 and 6 and their denial would be error. *Bresnick v. Heath,* 292 Mass. 293, 298. *Hoffman v. Chelsea,* 315 Mass. 54. *Liberatore v. Framingham,* 315 Mass. 538. *L. Grossman Sons, Inc. v. Rudderham,* 319 Mass. 698, 699-700. *Quality Finance Co. v. Hurley,* 337 Mass. 150.

■ We consider the contention in the

plaintiff's request number 3 as one asserting a right of cancellation even though the word "rescission" is used in request number 3. We do this because the words "cancellation" and "rescission" appear to be used synonymously in the Uniform Commercial Code. G.L. c. 106, §2-720. Such equitable right as the plaintiff may have had to proceed in equity to rescind the contract because of misrepresentation is not before us. See *Bellefeuille v. Madeiros,* 335 Mass. 262.

■ There was evidence that the plaintiff's officer seeking payment for the carpeting, learned that the Carreiros did not own the house and immediately called the defendant's Picard on the telephone and told him that he had cancelled the sale and demanded permission to remove it. That evidence does not warrant a finding that the plaintiff had a legal right to cancel the sale.

G.L. c. 106, §2-702(2) gives a seller a right to reclaim goods received on credit by an insolvent buyer subject to subsection (3) to the rights of third persons in ordinary course. There is no finding or claim that the Carreiros were insolvent. They had deposited $1,500.00 under their agreement to purchase 15 Picard Court and $200.00 toward the price of the carpeting. There is no evidence that they were unable, although unwilling, to pay the balance of the price for the carpeting. G.L. c. 106, §1-201(23). G.L. c. 109A, §2. *Commissioner of Banks v. Walker,* 299 Mass. 123.

The other legal remedies afforded an unpaid seller for any breach by a buyer are set forth in G.L. c. 106, §2-793. Therein it is provided that where a buyer ". . . fails to make a payment due on or before delivery . . . if the breach is of the whole contract, then also with respect to the whole undelivered balance, the aggreived seller may", among other things, recover the price from the buyer or (f) cancel. See G.L. c. 106, §2-106(4). But the right to cancel expressly applies only to goods not yet delivered. See *Coleman v. NY, NH & H RR,* 215 Mass. 45, 48-49, a case prior to the Code which recognizes that "This right of an unpaid vendor to enforce his lien by possessing himself of goods, whereof the purchaser has acquired the title but not the possession, can be exercised only when the buyer is insolvent."

We hold that the plaintiff had no legal right to cancel the completed sale and that the justice was right in denying request number 3. It follows as a necessary consequence that as the plaintiff was without title to the carpeting, or without right to its possession, it had no legal basis for an action for conversion because in an action for conversion the plaintiff has the burden of proving his ownership, general or special, and a right of *immediate* possession of the goods. Request number 6 was also rightly denied. *Massachusetts Lub. Corp. v. Socony-Vac. Oil Co.,* 305 Mass. 269, 271. *MacNeil v. Hazelton,* 306 Mass. 366. *Lane v. Volunteer Co-*

*operative Bank, Boston,* 307 Mass. 508, 514. *Mazeikis v. Sidlauskas,* 346 Mass. 539, 544. ██ All other questions raised in the report which have not been argued are treated as waived.

*As no error of law has been shown, an order should be entered dismissing the report.*

Abner Kravitz of Fall River for the Plaintiff.

William E. White of Fall River for the Defendant.