ERNEST HENDERSON, THIRD, vs. WILLIAM F. D'ANNOLFO, individually and as trustee, & others, trustees[1]; RICHARD H. DODGE ELECTRICAL CONTRACTORS, INC., third-party defendant
(and a companion case[2]).

Norfolk. December 16, 1981. — March 9, 1983.

Present: ARMSTRONG, ROSE, & SMITH, JJ.

*Fraud. Practice, Civil,* Directed verdict, Judgment notwithstanding verdict, Relief from judgment, Master, Findings by judge, Parties. *Trust,* Personal liability of trustee. *Evidence,* Relevancy and materiality, Photograph, Expert opinion.

In an action by the buyer of a nursing home alleging fraudulent misrepresentation on the basis that, having relied on the representations of one of the sellers at the time of the sale, he later discovered that the nursing home was in violation of the law in that its electrical wiring was substandard, evidence was sufficient to support findings that the seller, who was also the general contractor who built the nursing home, knew at the time of his representations that proper electrical materials had not been installed and wiring had not been properly protected, and that the buyer's reliance on the seller's representations was not unreasonable. [419-423]

In an action by the buyer of a nursing home alleging damages for fraudulent misrepresentation by the sellers of the condition of the building's electrical wiring, there was no merit to the sellers' contention that, despite evidence that the buyer personally bore the expense of rewiring, he did not suffer any damages, as matter of law, because costs of repair incurred by qualifying nursing homes are theoretically recoverable through Federal Medicare rate setting procedures. [423]

In the circumstances, no abuse of discretion appeared in a judge's denial of motions for relief from judgments entered against the trustees of a trust, holding them liable individually and as trustees for fraudulent misrepresentations made during the sale of property administered by

---

[1] Michael J. Antonellis and Samuel Saitz, as trustees of the Mark-Phillip Trust.

[2] William F. D'Annolfo & others, trustees, vs. Richard H. Dodge Electrical Contractors, Inc.

the trust, despite contentions by the trustees that they served without remuneration for their services, were inactive in the administration of the trust, and were misled by the plaintiff's counsel who had advised them that they were named as defendants only as a formality and were in no peril of individual liability. [423-425]

In consolidated actions brought by the buyer of a nursing home alleging that the sellers misrepresented the condition of the electrical wiring and by the sellers seeking a declaratory judgment against a third-party defendant, who had installed the electrical wiring, the judge who, after a special verdict in the original jury action, treated the third-party complaint as a nonjury action, did not err in not accepting in one instance a specific general finding of the master that there was no code violation at the time of the building's construction where it was inconsistent with the master's subsidiary findings of code violations, and in drawing his own ultimate finding from the subsidiary findings that code violations by the third-party defendant existed, while, in a second instance, adopting the subsidiary findings of the master, making additional subsidiary findings based on the evidence introduced during the jury trial, and finding other code violations by the third-party defendant. [425-427]

A buyer of a nursing home was the proper party to bring an action against the sellers for misrepresentation with respect to the condition of the building's electrical wiring, although at the time the cost of rewiring the building was incurred, title to the nursing home was in the sellers, where the buyer, rather than the sellers, bore the expense of the rewiring, and where the beneficial ownership of the nursing home was vested in the buyer alone. [428]

In an action by the buyer of a nursing home alleging fraudulent misrepresentation by the sellers with respect to the condition of the building's electrical wiring, the judge did not abuse his discretion in admitting in evidence photographs depicting the wiring in the nursing home, although the photographs were taken after replacement of the wiring had commenced and although some of them contained circles drawn to emphasize alleged defects in the wiring, where the photographs were introduced after considerable testimony was taken tending to show their accuracy and relevance, and where the circles themselves were merely cumulative of other evidence. [429-430]

In an action by the buyer of a nursing home alleging fraudulent misrepresentation by the sellers with respect to the condition of the building's electrical wiring, a damaged length of electrical cable which had been removed from the building during the process of rewiring was properly admitted in evidence, and any objection to the chain of custody of the cable went only to its weight as evidence. [431]

In an action by the buyer of a nursing home alleging fraudulent misrepresentation with respect to the building's electrical wiring, there was

no merit to contentions by the sellers that testimony of two electricians relative to the condition of the wiring lacked a proper foundation and that testimony of an expert witness as to the existence of State electrical code violations touched impermissibly on the ultimate issues being tried before the jury. [431-432]


CONTRACT AND TORT. Writ in the Superior Court dated September 20, 1971.

BILL IN EQUITY filed in the Superior Court on May 3, 1972.

The cases were consolidated and were tried before *Sullivan, J.*

*Barry Y. Weiner & Robert T. Harrington* for Michael J. Antonellis & another.

*Roger S. Davis (Ralph T. Calderaro* with him) for William F. D'Annolfo.

*Donald L. Conn* for Richard H. Dodge Electrical Contractors, Inc.

*Harry L. Manion, III (Gordon T. Walker* with him) for Ernest Henderson, III.

SMITH, J. These are appeals from consolidated actions tried in the Superior Court, involving claims of misrepresentation allegedly made in connection with the sale in 1969 of the real and personal property of a nursing home. In order better to understand the issues raised on appeal, it is first necessary to explore the procedural histories of the cases.

1. *Procedural histories of the various actions.* In 1971 Ernest Henderson, III, brought an action in contract and tort against the Normandy House Nursing Home, Inc. (nursing home), William F. D'Annolfo (D'Annolfo) individually, and D'Annolfo, Frank D'Annolfo, Michael J. Antonellis, and Samuel Saitz as trustees of the Mark-Phillip Trust (trustees).[3] The complaint alleged that on November 7, 1969, Henderson had purchased the nursing home from D'Annolfo, individually, and from the trustees, and that, at

---

[3] Normandy House Nursing Home, Inc., and Frank D'Annolfo are not parties to these appeals.

the time of the purchase, the defendants had fraudulently misrepresented (1) that the nursing home was operating without any violation of laws or regulations, (2) that there was no condition relating to the nursing home which could result in such a violation, and (3) that the nursing home was in good repair. The complaint further stated that Henderson relied on the representations at the time of sale but later discovered that the nursing home was in violation of the law in that its electrical wiring was substandard. The defendants were alleged to know or to have had reason to know of the violations.

After the defendants had filed their answers, they brought a bill (complaint) for declaratory judgment against Richard H. Dodge Electrical Contractors, Inc. (Dodge). The complaint alleged that D'Annolfo and the trustees had been sued by Henderson, who claimed that the electrical system was substandard and that Dodge had performed the electrical work during the construction of the nursing home. Among other things the action sought a declaration that in the event D'Annolfo or the trustees should be held liable in the action brought by Henderson, the court should "declare whether . . . Dodge . . . [should] be liable to [the defendant or defendants held liable in the original action] and the amount of Dodge's liability."[4] The complaint, docketed on the equity side of the court, specifically requested that the court order such issues as it might deem appropriate to be tried by a jury.[5] The two actions were consolidated, and after consolidation, a judge allowed the defendants' motion

---

[4] The complaint for declaratory judgment was akin to an impleader in the original action. See note 10, *infra.*

[5] The lawyers for all the parties have consistently maintained throughout these proceedings that the complaint for declaratory judgment did not contain a jury claim. Our examination of the complaint discloses that it does contain a jury claim. The complaint, although docketed on the equity side in accordance with pre-rules practice, stated by its nature a legal claim which was triable to a jury as of right. The claim for jury trial was ultimately waived, as described later in this opinion. See note 16, *infra.*

to implead Dodge as a third-party defendant in Henderson's original action.[6]

2. *Reference to auditor/master.* After consolidation, the two cases were referred to Mr. Nathan Moger. He was appointed auditor in the original action and, undoubtedly because the action for declaratory relief had been docketed on the equity side of the court, he was appointed master in that matter.[7] Mr. Moger submitted an auditor's report in the law action on May 8, 1974, and on May 10, 1974, filed a master's report adopting the auditor's report as the report in the action for declaratory relief.

3. *The action of the trial judge on the cases.* The original law action of Henderson against D'Annolfo and the trustees, with Dodge as third-party defendant, was tried before a judge sitting with a jury. At the conclusion of the trial, the judge submitted special questions to the jury under Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974). By their form, those questions only presented Henderson's claim against D'Annolfo for the jury's consideration.[8] The judge did not

---

[6] Another action between the parties which was also the subject of an appeal, *Normandy House Nursing Home, Inc.* v. *Henderson,* 6 Mass. App. Ct. 847 (1978), is not concerned with these actions.

[7] Because the reference was made prior to the adoption of the Massachusetts Rules of Civil Procedure, 365 Mass. 730 (1974), Mr. Moger wore two hats, those of auditor and master. Under the present rules, that distinction has been erased. *Jones* v. *Wayland,* 374 Mass. 249, 255 n.5 (1978).

[8] The questions submitted to the jury were:

"1. Do you find that William D'Annolfo made fraudulent misrepresentations to Ernest Henderson III for the purpose of inducing him to purchase Normandy House and, if so, do you further find that Ernest Henderson purchased Normandy House in reliance upon such false misrepresentations?"

"Yes"

"No"

"2. If the answer to # 1 is 'yes,' what are the damages?"

We note that the judge's decision to submit special questions was appropriate in light of the factual complexities and several parties involved in this case. See *Harding* v. *Evans,* 207 F. Supp. 852, 855 (M.D. Pa. 1962); 9 Wright & Miller, Federal Practice and Procedure § 2505 (1971); Smith & Zobel, Rules Practice § 49.3 (1977).

submit special questions to the jury with respect to either Henderson's claim against the trustees or the defendants' third-party action against Dodge. There was no objection by any party to this procedure. See *Weeks* v. *Harbor Natl. Bank,* 388 Mass. 141, 145 (1983); Mass.R.Civ.P. 49(a), set out in the margin.[9] The jury answered the first question in the affirmative, finding D'Annolfo liable to Henderson for misrepresentation. In answer to the second question, the jury awarded Henderson $85,000 in damages.

After the jury's answers were returned, the judge, acting under the last sentence of Mass.R.Civ.P. 49(a), filed a memorandum of decision with respect to the liability of the trustees on Henderson's original claim. Based on the jury's answers and pursuant to certain of the auditor's findings, the judge ordered judgment to enter against each of the four trustees individually and as trustees.

---

[9] Massachusetts Rule of Civil Procedure 49(a), 365 Mass. 812 (1974), provides in its entirety:

"(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. *If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict*" (emphasis added).

None of the defendants made an effective demand that any additional questions be propounded to the jury. The wisdom of the judge's decision to submit only limited aspects of the case for the jury's deliberation is therefore not before this court. Parenthetically, however, we note that in complex litigation the essential purposes of the use of special questions are to assist the jury in differentiating among the various issues presented (see note 8, *supra*) and to isolate the damaging effect of any errors (see *Jamison Co.* v. *Westvaco Co.,* 526 F.2d 922, 935 (5th Cir. 1976), but not to limit the jury's role by the simple expedient of submitting only a few narrow questions.

The judge next considered the claim brought by the original defendants seeking a declaratory judgment against Dodge. As explained further in this opinion, the judge accepted the master's report pursuant to the provisions of Mass.R.Civ.P. 53(e)(2), 365 Mass. 820 (1974), made subsidiary findings in accordance with the evidence he heard during the trial of the original action and then made ultimate findings. The judge ordered judgment to enter in favor of D'Annolfo individually and the trustees in the amount of $85,000 against Dodge.[10]

4. *Issues on appeal.* There are numerous errors assigned by the various defendants on appeal. Some issues are common to all while others are raised only by a particular defendant.

(a) *Sufficiency of the plaintiff's evidence.* D'Annolfo and the trustees filed motions for directed verdicts and for judgment notwithstanding the verdicts.[11] Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). The judge denied both motions.

As an initial matter, we note that the standard governing a motion for judgment notwithstanding the verdict is the same as that applicable to a motion for a directed verdict, *D'Annolfo* v. *Stoneham Housing Authy.*, 375 Mass. 650, 657 (1978), "that is, Does the evidence, construed against the moving party, justify a verdict against him?" *Ibid.* We, therefore, consider only evidence favorable to the plaintiff.

---

[10] It is unclear from the form of the judgment whether the judge chose to decide the defendants' separate claim for declaratory relief or their third-party action against Dodge, as impleaded in the original action. The two actions were identical in substance and different only in form. One should have been dismissed. Because they were identical it is not of significance that the judge based his supplementary subsidiary findings on the evidence adduced in the jury trial of the original and third-party actions (the complaint for declaratory relief not having been called for trial simultaneously). In other words, the procedural irregularity was harmless, because the findings the judge made in the defendants' separate action for declaratory relief could properly have been made in their third-party action.

[11] As a practical matter, it is difficult for us to discern what the trustees sought to accomplish in filing a motion for a judgment n.o.v., as their liability had been decided by the judge rather than by the jury.

420 15 Mass. App. Ct. 413

Henderson v. D'Annolfo; Richard H. Dodge Electrical Contractors, Inc.

*H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 71-72 (1976). *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 326-327 (1982). The evidence at trial consisted of testimony, numerous exhibits, and the auditor's report, which was read to the jury without objection and, in a jury trial, is accorded the status of prima facie evidence. Mass.R.Civ.P. 53(e)(3), 365 Mass. 820 (1974).

The evidence taken most favorably to the plaintiff Henderson would have permitted the jury to find the following facts. The nursing home was constructed in 1965-1966 by a general contracting company wholly owned by D'Annolfo. The electrical subcontract was performed by Dodge. As general contractor, D'Annolfo made frequent visits to the construction site and consulted with Dodge on various phases of the electrical work.

On completion of the building, a corporation (Normandy House Nursing Home, Inc.) with D'Annolfo as its president and sole shareholder, was established to operate the nursing home. Title to the land and buildings of the nursing home was vested in the Mark-Phillip Trust, of which D'Annolfo was a trustee and sole beneficiary. In the fall of 1969, Henderson approached D'Annolfo and expressed interest in purchasing the nursing home. At a subsequent meeting the terms of the purchase were negotiated by Henderson and D'Annolfo, both represented by counsel. Some time later, the parties entered into two written agreements to consummate the sale of the nursing home. The first agreement, signed by D'Annolfo only, transferred all the assets of the nursing home to Henderson. That agreement stated, in part, that "said nursing home is operating without violation of record under the laws and regulations of the Commonwealth of Massachusetts . . . and no violation thereof is known to Seller and Seller has no reason to believe that any such violation exists . . . ." The auditor found those statements to have been made by D'Annolfo as statements of fact, about which he had knowledge or which were susceptible of actual knowledge. The second agreement, signed by the trustees, conveyed the land and buildings and pro-

vided that the premises, when delivered, were to be "not in violation of . . . building . . . laws." The auditor found that Henderson relied, in purchasing the nursing home, on all of the above representations in the sales agreements.

In November, 1970, a maintenance man at the nursing home received an electrical shock from an electrical fixture in a patient's room. As a result of an investigation by an electrician called in to rectify the matter, numerous electrical code violations were discovered throughout the nursing home's wiring system.[12] The violations included the absence of metal junction boxes at the electrical outlets for ceiling fixtures and the failure to secure and protect much of the wiring in the nursing home with approved staples, straps, or similar fittings. The auditor found that D'Annolfo either knew or should have known that metal junction boxes were not used and that the wiring was not properly secured. After the code violations were discovered, Henderson ordered virtually the entire electrical system replaced, at a cost of $150,000.

Upon all the evidence, the defendants' motions must fail. There was evidence before the jury that D'Annolfo was the general contractor who had constructed the nursing home. There were at least two violations of the electrical code, namely the absence of junction boxes and improperly protected wiring. The jury could infer that at least one (if not both) of the violations was present at the time of the purchase by the plaintiff. In addition, D'Annolfo signed an agreement in which he stated to the plaintiff that the nursing home was operating without violating the law, and that "no violation is known to Seller, and Seller has no reason to believe that any such violation exists." All of the trustees, including D'Annolfo, signed an agreement which stated that the premises, when delivered to the plaintiff, were "not in violation of . . . building . . . laws." There was evidence

---

[12] The relevant code is the Massachusetts Electrical Code (1967), promulgated by the Board of Fire Prevention Regulations, Department of Public Safety, under the authority of G. L. c. 143, § 3L. See now 527 Code Mass. Regs. § 12 (1981).

before the jury that D'Annolfo was, during the negotiations, acting as trustee of the Mark-Phillip Trust and was representing and acting for all the other trustees, and, as a consequence, that his representations were made on behalf of all the other trustees.

It is the law in the Commonwealth that proof of the elements of knowledge and intent in actions for fraudulent misrepresentation "may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive." *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403, 404 [1888], quoted in *Powell* v. *Rasmussen,* 355 Mass. 117, 118 (1969). See *Yorke* v. *Taylor,* 332 Mass. 368, 371 (1955). That rule has been held to apply to the sale of real property (*Snyder* v. *Sperry & Hutchinson Co.,* 368 Mass. 433 [1975]), particularly where, as here, the seller was also the builder of the structure. *McMahon* v. *M & D Builders, Inc.,* 360 Mass. 54 (1971). The jury could find that the misrepresentations of D'Annolfo, the general contractor who constructed the nursing home, were made of his actual knowledge. He visited the construction site often during the course of the project and consulted with Dodge on various phases of the electrical work. The jury could find that, as general contractor, D'Annolfo knew that proper electrical materials were not being installed and that wiring was not properly protected.[13]

The defendants contend that Henderson failed to show that he relied on the representations of the defendants, and alternatively that, even if he did rely on the statements,

---

[13] D'Annolfo and the trustees contend that since the wiring was hidden in the walls and ceiling of the nursing home, the fact of defective condition was not "susceptible of knowledge" and, therefore, outside the rule of *Yorke* v. *Taylor,* 332 Mass. 368, 371 (1955). Their contention overlooks the fact that D'Annolfo was the general contractor and was in a unique position to know before the electrical work was concealed that substandard materials were used, or in the case of the junction boxes, that required materials were not used at all.

such reliance was unreasonable as matter of law. The auditor, however, made findings that Henderson relied upon the statements and that a bargain was not struck until the statements were made. The reliance was not unreasonable, for the law places no obligation on a purchaser to make an independent investigation of statements made as of the seller's own knowledge. *Yorke* v. *Taylor,* 332 Mass. 368, 374 (1955).

Finally, the defendants argue that, despite evidence that Henderson personally bore the expense of rewiring the nursing home, he did not suffer any damages, as matter of law. Their contention is that, because costs of repair incurred by qualifying nursing homes are theoretically recoverable through Federal Medicare rate setting procedures (42 U.S.C. § 1395 [1976 & Supp. 1980]), the plaintiff cannot be said to have suffered any injury. We find their contention wholly without merit. The plaintiff documented his expenses in having the home rewired; that he might eventually recover those expenses through a source collateral to the defendants is wholly irrelevant to the issue of the defendants' liability. *Shea* v. *Rettie,* 287 Mass. 454, 458 (1934). See *Jones* v. *Wayland,* 374 Mass. 249, 262 (1978); *Goldstein* v. *Gontarz,* 364 Mass. 800, 808-809 (1974).

(b) *Liability of the Mark-Phillip trustees.* Defendants Saitz and Antonellis, trustees of the Mark-Phillip Trust, appeal from the denial of their motions for relief from the judgments entered against them. Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). The judgments were entered upon the auditor's findings, after the jury had returned a special verdict finding D'Annolfo liable for misrepresentation. As noted earlier, there were ample grounds for determining that the sale contract executed by the trustees contained material misrepresentations of fact. Because the jury were not instructed to make any finding relative to the trustees' liability for misrepresentation (see note 9, *supra*), the judge did so. Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974).

The judge's finding was consistent with controlling principles of law. At the time relevant to this litigation, it was

well settled that a trustee could be held personally liable for torts committed in the administration of a trust, regardless of the trustee's lack of personal culpability.[14] *Gardiner* v. *Rogers*, 267 Mass. 274, 278 (1929). *Larson* v. *Sylvester*, 282 Mass. 352, 357-358 (1933). See 3 Scott, Trusts §§ 247, 264 (1967). We therefore conclude that the entry of judgment against the trustees was proper.

In moving for relief from that judgment, the trustees submitted unanswered affidavits. The affidavits in substance state that the appellants served as trustees only as an accommodation to D'Annolfo, received no remuneration for their services, were inactive in the administration of the trust, and had been misled by plaintiff's counsel, who soon after the original suit was brought advised them that they were named as defendants only as a formality and that they were in no peril of individual liability. Citing those affidavits and emphasizing that they had not been individually represented during the hearings and trial, the trustees based their motions for relief from judgment on the asserted grounds of excusable neglect, fraud, and the need to avoid injustice. Mass.R.Civ.P. 60(b)(1), (3), and (6), 365 Mass. 828-829 (1974).

Even accepting the affidavits at face value we are not inclined to overturn the trial judge's denial of the motions, without a clear showing of abuse of discretion. *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 227 (1979). *Berube* v. *McKesson Wine & Spirit Co.*, 7 Mass. App. Ct. 426, 433 (1979). *Artco, Inc.* v. *DiFruscia*,

---

[14] The appellants do not contend that their conduct as trustees should be measured in light of the standards prescribed by G. L. c. 203, § 14A, imposing liability on trustees only when shown to be personally at fault. Their conduct relevant to this action took place in 1969. Section 14A was not inserted until 1976 and did not take effect until 1978. There is no sound reason to construe the statute as retroactive in application (*Yates* v. *General Motors Acceptance Corp.*, 356 Mass. 529, 531 [1969]; contrast *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.*, 380 Mass. 212, 214-215 [1980]), and, in fact, there was considerable evidence presented tending to show that Saitz and Antonellis were personally at fault.

5 Mass. App. Ct. 513, 517 (1977). The appellants cite no authority to support their contention that the liability of inactive or unpaid trustees is governed other than by the general rule noted earlier. *Larson* v. *Sylvester, supra. Gardiner* v. *Rogers, supra.* Nor are we convinced that the representations allegedly made by opposing counsel amount to fraud (see e.g., *Artco, Inc.* v. *DiFruscia, supra* at 517-518), or justified neglect of the pending action. Saitz was an accountant, Antonellis a lawyer, and both may be fairly expected to have known the law governing trustee liability and to have recognized the need to consult independent counsel. Moreover, during the early stages of litigation the trustees were in fact represented by counsel to the Mark-Phillip Trust, and their position was advocated both during and after trial by counsel to D'Annolfo. In light of those considerations, the duration of the defendants' neglectful conduct, the doubtful merits of their substantive defenses, and the degree of prejudice that reversal would occasion the plaintiff at this stage of the proceedings, we decline to disturb the judge's ruling.[15]

(c) *Judgment against Dodge.* As previously noted (part 3, *supra*) the judge, after the return of the special verdict in the original action, took up the action for declaratory relief brought by the original defendants against Dodge. He treated the bill as a nonjury action, made findings and ordered judgment to enter against Dodge.[16] The sole objection of Dodge to the way the judge disposed of the com-

---

[15] We are particularly reluctant, on the record in this case, to find denial of a motion predicated on Mass.R.Civ.P. 60(b)(6) to be an abuse of discretion. "Relief under Rule 60(b)(6) will not be granted except in extraordinary circumstances." *Artco, Inc.* v. *DiFruscia, supra* at 517, citing *Ackermann* v. *United States,* 340 U.S. 193, 202 (1950). This is not such a circumstance.

[16] At no time during the course of these proceedings did any attorney call the attention of the judge to the claim of trial by jury contained in the complaint for declaratory judgment. Dodge did not make any objection nor does he argue to us that the judge should not have handled the matter as a nonjury action. We treat the inaction of Dodge as a waiver of the jury claim.

plaint for declaratory judgment is the manner in which the judge used the master's report in reaching his decision. The judge, in one instance, did not accept the ultimate finding of the master because it was inconsistent with the subsidiary findings, and he found code violations by Dodge. In another instance, the judge adopted the subsidiary findings of the master, made additional subsidiary findings based on the evidence introduced during the jury trial, and found other code violations by Dodge. Dodge challenges the judge's action and states that the master's report presented "facts final" which are "binding" upon the judge unless they are "clearly erroneous." In addition, Dodge contends that a judge cannot split with a master the responsibility for making "indivisible finding[s] of fact." See *Peteros* v. *Peteros,* 328 Mass. 416, 419-421 (1952).

In regard to Dodge's first point the report filed by the master incorporated by reference all findings of fact contained in the auditor's report. The auditor in his report under "General Findings of Fact" stated that "[b]ased upon the foregoing subsidiary findings of fact, I make the following general findings of fact: . . . I find the nursing home at 17 Green Street, Melrose, did not violate any provision of the electrical code when it was built." "The nursing home at 17 Green Street, Melrose, did not violate any provision of the electrical code on (a) October 21, 1969 (when statements were made by or on behalf of the defendants to the plaintiff), or (b) on December 1, 1969, when title to the property passed to [Henderson] . . . ." The judge did not adopt the above quoted portions of the master's report, ruling that, as general findings of fact, they were erroneous because they were inconsistent with the subsidiary facts found. As subsidiary findings of fact, the master found that no metal boxes were used by Dodge at various electrical outlets throughout the nursing home and that § 300-15 of the electrical code required a box at each outlet joining nonmetallic sheathed cable "which was the type of outlet and cable at the nursing home." These subsidiary findings of code violations by Dodge, the electrical contractor at the

time that the nursing home was constructed, are inconsistent with the general finding that there was no code violation at the time the nursing home was built. In instances such as this, the judge was correct in ruling that he was not barred by a specific general finding which was inconsistent with subsidiary findings and that he could draw his own ultimate finding from the subsidiary findings. *Murray* v. *Bateman*, 315 Mass. 113, 117 (1943). *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 283 (1976).

The judge made an ultimate finding that other code violations existed, based on the master's subsidiary findings and the evidence heard by the judge at trial. The judge found that improper material was used in regard to supports and that their positioning constituted a violation. The code (§ 336-5) required the use of "approved staples, straps, or similar fittings . . . at intervals not exceeding 4½ feet . . . ." The master found that "tie straps" were used, that "insulated wire" was used to tie up the cables, and that there were "10 such tie straps per corridor." The master did not state the length of the corridor. In the trial before the judge and jury, the length of the corridors was established, and the judge took that evidence and found that there were code violations.[17] The judge's ultimate finding was not inconsistent with the subsidiary finding of the master, and it was premised upon additional evidence that the judge heard. This method of proceeding was approved in *Jones* v. *Wayland*, 374 Mass. at 254-255.[18]

---

[17] The evidence of the length of the corridors was not controverted at trial.

[18] Defense counsel's reliance on *Peteros* v. *Peteros*, 328 Mass. 416, 420 (1952), is misplaced. In *Peteros*, the judge held a very limited evidentiary hearing on a single issue in the case, and heard testimony relative to only a narrow aspect of that issue. The court held that it was error for the judge to make a finding inconsistent with the finding of the master on that single issue. *Peteros* is distinguishable in that under Mass.R.Civ.P. 53(e)(2), 365 Mass. 820 (1974), a judge may now "adopt the report or may modify it or may reject it in whole or in part *or may receive further evidence* or may recommit it with instructions." (Emphasis added.) See also *Jones* v. *Wayland*, 374 Mass. 249, 255 (1978).

(d) *Standing of Henderson to bring action.* D'Annolfo
contends that Henderson is not the proper party to bring the
action because, at the time that the cost of rewiring the
nursing home was incurred, title to the nursing home was in
the trustees, rather than in Henderson. The evidence
showed that Henderson, rather than the trust, bore the ex-
pense of the rewiring, and that the beneficial ownership of
the trust property was vested in Henderson alone.

Where there are no allegations of unfair surprise or preju-
dice, we are not inclined to dismiss an action because of a
possible technical defect in pleading (*Wadsworth* v. *Boston
Gas Co.*, 352 Mass. 86, 88 [1967]; *Rafferty* v. *Sancta Maria
Hosp.*, 5 Mass. App. Ct. 624, 626-629 [1977]), particularly
where, as here, there is ample reason to view the named
plaintiff as the real party in interest. Mass.R.Civ.P. 17(a),
365 Mass. 763 (1974). *Lyon* v. *Bloomfield*, 355 Mass. 738,
743 (1969). Further, in keeping with our view of rules 15
and 17(a), even if we were of opinion that the trustees were
the real parties in interest, we would permit amendment of
the complaint in the context of this case. See 6 Wright &
Miller, Federal Practice and Procedure § 1501 (1971);
Smith & Zobel, Rules Practice §§ 15.9 (1974), & 17.6
(1975).

(e) *Evidentiary rulings.* (1) *Photographs of the wiring at
the nursing home.* All defendants claim that the judge
erred in admitting some thirty-six photographs depicting
the wiring in the nursing home. The defendants argue that
the photographs, taken after replacement of the wiring had
commenced, lacked an adequate foundation as accurate
portrayals of the condition of the wiring at the time the
nursing home changed hands. Alternatively, it is argued
that circles drawn on six of the photographs to draw atten-
tion to alleged defects in the wiring render the photographs
unfairly prejudicial to the defense.

To be admissible in evidence, a photograph must be
shown to be accurate and bear enough similarity to circum-
stances at the time in dispute to be relevant and helpful to
the jury in its deliberations. *Howe* v. *Boston*, 311 Mass.

278, 281-282 (1942). *Blair* v. *Pelham,* 118 Mass. 420, 421 (1875). The admissibility of photographs, as with other rulings on evidence, is largely committed to the discretion of the trial judge. *Commonwealth* v. *Noxon,* 319 Mass. 495, 536-537 (1946). *Swart* v. *Boston,* 288 Mass. 542 (1934). In this case, the photographs were introduced after considerable testimony tending to show their accuracy and relevance. While that testimony was elicited in open court, and not, as is preferable, by voir dire (see *Gillett* v. *Shaw,* 217 Mass. 59, 61-62 [1914]), the defendants have not persuaded us that an abuse of discretion was committed. That conditions when the photographs were taken may not have been identical to conditions when the plaintiff purchased the nursing home does not render the photographs inadmissible. *Commonwealth* v. *Welansky,* 316 Mass. 383, 401-402 (1944). Nor was the admission of the several photographs upon which circles were drawn an abuse of discretion. While the practice of marking photographs is to be discouraged and carries a potential for unfair prejudice, we are satisfied that in this case the circles were merely cumulative, emphasizing, as did the testimony of the verifying witness, the relevant portions of the photographs. See *State* v. *Bazinet,* 372 A.2d 1036, 1038 (Me. 1977); 3 Scott, Photographic Evidence § 1484 (1969).

(2) *Length of wire.* Dodge assigns as error the admission in evidence of a damaged length of electrical cable which, testimony suggested, had been removed from the nursing home during the process of rewiring. Dodge contends that the chain of custody of the cable was not sufficiently established to render it admissible in evidence. He correctly notes that the chain of custody was not irrefutably established, but when, as was the case here, credible testimony is offered to establish that chain, any imperfections go to the weight of the evidence, not to its admissibility. *Guillemette* v. *Commonwealth,* 375 Mass. 543, 546 (1978). *Commonwealth* v. *Hogg,* 365 Mass. 290, 294-295 (1974).

(3) *Testimony relating to the condition of the wiring.* Dodge argues that the testimony of two electricians rela-

tive to the condition of the wiring at Normandy House lacked a proper foundation because it was not shown that their observations were of conditions in existence at the time of purchase. Again, we find the relevance of their testimony to be clear (*Commonwealth* v. *Wood*, 384 Mass. 641, 643-644 [1981]) and the admission of that testimony to be within the sound discretion of the trial judge.

Dodge raises a similar contention with reference to an expert witness who, based on his understanding of the testimony of the other electricians and on a cursory inspection of the building, testified that the electrical system at Normandy House was in violation of several provisions of the State electrical code. D'Annolfo argues that the expert's testimony touched impermissibly on the ultimate issues being tried before the jury.

Neither defendant contends that the witness was unqualified to give expert testimony, and we therefore find their arguments to be without merit. An expert's testimony may "be based on either the expert's direct personal knowledge, on evidence already in the record . . ., or on a combination of these sources." *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 32 (1979). See also *Kaye* v. *Newhall*, 360 Mass. 701, 703 (1972); *Power Serv. Supply, Inc.* v. *E.W. Wiggins Airways, Inc.*, 9 Mass. App. Ct. 122, 130 (1980). Nor is it objectionable for an expert to offer opinion testimony regarding an issue which may ultimately be submitted to the jury to decide. *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 294 (1978). *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977).

In summary, the record is devoid of reversible error. The judgments are affirmed.

*So ordered.*